IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STRATMAR RETAIL SERVICES, INC., | CASE NO.   5:14-CV-00780-BYP |
| Plaintiff, | JUDGE BENITA Y. PEARSON |
| vs. | **DEFENDANT FIRSTENERGY** |
| | **SERVICE COMPANY'S MOTION** |
| FIRSTENERGY SERVICE COMPANY, | **FOR SUMMARY JUDGMENT** |
| Defendant. | |

NOW COMES Defendant FirstEnergy Service Company ("Defendant" or "FES"), by and through undersigned counsel, and hereby moves this Honorable Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on Counts I through VI of Plaintiff StratMar Retail Services, Inc.'s ("Plaintiff" or "StratMar") First Amended Complaint (Doc #: 31) and for summary judgment on Counts One and Two of Defendant's First Amended Answer and Counterclaims (Docs #: 29, 32).   As set forth in the attached memorandum, supporting deposition transcripts, affidavits, and exhibits, summary judgment is appropriate because there is no genuine dispute as to any material fact and FES is entitled to judgment as a matter of law. The reasons for this Motion are more fully set forth in the attached Memorandum in Support, which is fully incorporated herein by reference.

Respectfully submitted,

*/s/ Ronald S. Kopp*
Ronald S. Kopp (0004950)
rkopp@ralaw.com
Jessica A. Lopez (0090508)
jlopez@ralaw.com
Roetzel & Andress, LPA
222 South Main Street
Akron, OH  44308
Telephone:  330.376.2700
Facsimile:  330.376.4577

*Attorneys for Defendant,*
*FirstEnergy Service Company*

<u>**MEMORANDUM IN SUPPORT**</u>

I.     <u>**INTRODUCTION**</u>

This action arises from Defendant's lawful termination of the parties' Contract[1] on May 10, 2013. Thereafter, Plaintiff filed this action on April 10, 2014 alleging multiple claims including: breach of both express and implied-in-fact contracts (Counts I-II), promissory estoppel (Count III), unjust enrichment (Count IV), and negligent misrepresentation (Count V). (Doc #: 1). Later, Plaintiff amended its Complaint to add a tort claim for fraudulent inducement and punitive damages (Count VI), which joined Plaintiff's pre-existing tort claim for negligent misrepresentation. (Doc #: 31). As discussed in greater detail below, both tort claims are not cognizable under Ohio law pursuant to well-established precedent dictating that a claim sounding in breach of contract does not create a separate tort action.

The crux of Plaintiff's non-tort claims is that Defendant FES breached the parties' Contract by failing to provide 60-days' advance notice of termination and failing to pay 60-days' severance to Plaintiff. In essence, Plaintiff claims that a certain Statement of Work and/or other Contract provisions (*i.e.,* Article X) (*see* Exhibit B-C, attached to Amended Complaint)[2] provided for 60-days' advanced notice of termination and required FES to pay 60-days' worth of severance. StratMar, however, cannot point to any contact language that entitles it to severance payment rather than mere notice of termination. In fact, StratMar admitted no written agreement containing a severance payment term was negotiated or executed and, importantly, admitted that

---

[1] As used herein, the term Contract shall refer to the parties' 2012 agreement, which includes the: (1) Purchase Order (Exhibit A, Amended Complaint); (2) the original Statement of Work (Exhibit B, Amended Complaint); (3) FES' General Terms and Conditions (Exhibit C, Amended Complaint); and (4) FirstEnergy Supplemental Terms (Exhibit D, Amended Complaint)

[2] Exhibits referenced herein containing letters are those Exhibits attached to Plaintiff's Amended Complaint. Because Plaintiff elected to use letters instead of numbers for its Exhibits, Defendant will be using numbers for its Exhibits herein so as to avoid any confusion.

the proposed new Statement of Work ("New SOW") was only submitted to FES' Legal and Supply Chain Departments for review and approval. (*See* Deposition Transcript of Ethan Charas ("Charas Depo."), attached hereto and incorporated herein as <u>Exhibit 1</u>, pp. 70, 100-101, 109, 111-112, 117).[3]

Defendant's position as it relates to Plaintiff's claims and Defendant's counterclaims is based on the unambiguous[4] terms of the Contract:

(1) the parties' Contract expressly required any amendments or modifications undergo a formal written Change Order Process and be *signed by the parties* (*See* Exhibit D, p. 1, ¶ 3);

(2) the New SOW was not approved or finalized, and was only being reviewed by FES' Legal and Supply Chain Departments for final approval (a fact admitted by StratMar);[5]

(3) FES was only required to provide StratMar with 30-days' advanced notice of termination; and

(4) nowhere in the Contract is StratMar entitled to any severance payment of any length (Charas Depo., Exhibit 1, p. 70) (admitting that StratMar did not negotiate a severance payment term); (Sullivan Depo., Exhibit 2, pp. 14, 16-18).

During discovery, FES determined it overpaid StratMar $555,402.99 on certain pre-bills StratMar issued prior to termination of the Contract. (*See* Exhibit 3).[6]  On November 14, 2014, FES filed its First Amended Answer to include counterclaims for unjust enrichment/quantum

---

[3] Due to the Court's preference, as stated in the Case Management Order (Doc #: 13), entire deposition transcripts referenced herein (rather than just relevant pages cited) are being filed.

[4] As discussed in further detail below, Plaintiff's attempts to rely on extrinsic evidence is impermissible under the well-established Parol Evidence Rule.

[5] (*See* Deposition Transcript of Suzanne Sullivan ("Sullivan Depo."), attached hereto and incorporated herein as <u>Exhibit 2</u>, pp. 60-61, 83-84, 86, 88, 94, 103, 114-116, 119); (Charas Depo., Exhibit 1, pp. 100-101, 109, 111-112, 117).

[6] A damages spreadsheet and relevant StratMar invoices demonstrating overpayment made by FES are collectively attached hereto and incorporated herein as <u>Exhibit 3</u>.  Exhibit 3 demonstrates that FES paid pre-bills through June 15, 2013 when it later terminated the Contract on March 10, 2013.  As such, FES is entitled to recover the monies it overpaid by virtue of the issued pre-bills. (*See also* Sullivan Depo., Exhibit 2, pp. 27-30) (discussing damages spreadsheet).

meruit, breach of contract, and conversion to recoup these monies, along with 62 iPads never returned to FES.  (Doc #: 32).[7]  In response, StratMar claimed it was entitled to a windfall and not required to return the $555,402.99, despite StratMar's own Invoices demonstrating that the parties' course of performance was to treat pre-paid overpayments made by FES as credits (*i.e.*, refundable to FES).  (*See* Exhibit 3); (Sullivan Depo., Exhibit 2, pp. 21, 24, 31, 57).  Therefore, FES is entitled to recover the sum overpaid to StratMar.

FES is also entitled to summary judgment on these claims because Plaintiff cannot establish any genuine issue of material fact.  Specifically, Plaintiff has not and cannot sustain its burden, and further has inappropriately pled claims for tort in an action sounding completely in breach of contract.  Defendant is likewise entitled to summary judgment on its counterclaims, because no genuine issue of material fact exists.

## II.    LAW & ARGUMENT

### A.    Standard Of Review Under Fed.R.Civ.P. 56.

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  *See* Fed.R.Civ.P. 56(c).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Celotex Corp.*, 477 U.S. at

---

[7] The parties are in the process of negotiating a settlement agreement which would result in dismissal of FES' claims for breach of contract only as it relates to the iPad allegations (Doc #: 29, pp. 6-7, ¶¶ 25-26), as well as FES' claim for conversion, in its entirety (Doc #: 29, pp. 7-8, ¶¶ 28-33).  Based on the parties' good faith belief that a settlement agreement will likely be reached, StratMar and FES have agreed to not address these counterclaims relative to the iPads in their respective dispositive motions.  However, both parties also agree that they reserve the right to address these counterclaims relative to the iPads in their respective reply briefs should the parties be unable to reach a settlement agreement relative to these issues.

322-24.  The nonmoving party must come forward with more than a mere scintilla of evidence in support of its position.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

It is well-settled that, under Rule 56(e) of the Federal Rules of Civil Procedure, a moving party is entitled to judgment as a matter of law if the adverse party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof."  *See Celotex Corp.*, 477 U.S. at 322.  "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence that could carry the burden of proof of his claim at trial."  *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).  "In short, the summary judgment procedure allows the court to forecast the proof at trial to determine whether consequential facts are in dispute, and if not, to resolve the case without a trial."  *Id*. at 1316.  Thus, "when a party cannot establish the existence of an element essential to that party's case on which the party will have the burden of proof at trial, the court must enter summary judgment against that party, pursuant to Fed.R.Civ.P. 56."  *See Evans v. Jay Instrument and Specialty Co*., 889 F. Supp. 302, 307 (S.D. Ohio 1995), citing *Celotex Corp.*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *See Celotex Corp.*, 477 U.S. at 322.[8]

---

[8] Importantly, in this diversity case, this Court's task is "to determine the most likely disposition of the issues under Ohio law."  *HDM Flugservice GmbH v. Parker Hannifin Corp*., 332 F.3d 1025, 1029 (6th Cir. 2003).

**B.** **Defendant FES Is Entitled To Summary Judgment On Counts I Through VI Of The Amended Complaint Because Plaintiff Failed To Prove Essential Elements Of Its Claims And/Or Has Improperly Pled Legal Claims.**

    **i.** **Counts I (Breach Of Express Contract) And II (Breach Of Implied-in-Fact Contract).**

        **a.** **An Application Of The Parol Evidence Rule Demonstrates The Lack Of Breach.**

The well-established Parol Evidence Rule, relies on the fundamental principle that "the intent of the parties is presumed to reside in the plain language they chose to employ in the agreement." *Royal Ins. Co. v. Orient Overseas Container Line Ltd*., 514 F.3d 621, 633 (6th Cir. 2008) (noting that a court is not permitted to use extrinsic evidence to discern the intent of the parties, but, rather, must discern the intent from the plain language in the contract); *Kelly v. Medical Life Ins. Co*., 31 Ohio St.3d 130, 132, 509 N.E.2d 411, 413 (1987). The Parol Evidence Rule applies to contracts that are clear and unambiguous, which is a question of law for this Court. *Potti v. Duramed Pharm., Inc*., 938 F.2d 641, 647 (6th Cir. 1991); *Parrett v. American Ship Bldg. Co*., 990 F.2d 854, 858 (6th Cir. 1993). However, even when a contract is ambiguous, the Parol Evidence Rule is still applicable and dictates that extrinsic evidence may only be introduced "to interpret, but not to contradict [or supplement], the express language." *Ohio Historical Soc'y v. General Maintenance & Eng'g Co*., 65 Ohio App.3d 139, 146, 583 N.E.2d 340, 344 (10th Dist. 1989). *See also Academic Imaging, LLC v. Soterion Corp*., 352 F. App'x 59, 65 (6th Cir. 2009); *Carolina Cas. Ins. Grp., LLC v. P.B. Express, Inc.*, N.D.Ohio No. 1:09-CV-2028, 2011 WL 1135948, *4 (Mar. 29, 2011).

Ambiguity exists if the language is susceptible to two or more reasonable interpretations. *See Royal Insurance*, 514 F.3d at 634 (quoting *City of Wyandotte v. Consol. Rail Corp*., 262 F.3d 581, 585 (6th Cir. 2001)); *Potti*, 938 F.2d at 647. "However, a term is <u>not</u> ambiguous merely

because two parties offer substantially different interpretations." *Carolina Cas. Ins. Grp., LLC*, 2011 WL 1135948, at *4 (emphasis added); accord *216 Jamaica Ave., LLC v. S & R Playhouse Realty Co*., 540 F.3d 433, 440 (6th Cir. 2008).

Here, StratMar itself describes the Contract as "very straightforward." (*See* StratMar Rule 30(b)(6) Deposition Transcript ("StratMar Depo."), attached hereto and incorporated herein as Exhibit 4, p. 52). StratMar makes no claim that Article X of the General Terms and Conditions is ambiguous. (Exhibit C, Amended Complaint); (Charas Depo., Exhibit 1, pp. 66, 67-68, 72) (admitting that StratMar agreed to the language contained in Article X); (StratMar Depo., Exhibit 4, pp. 54, 78, 86-87) (admitting that Article X and the New SOW permitted FES to terminate the contract for convenience, and further admitting that Article X, subsections B and C, were agreed to by StratMar). StratMar only claims that: (1) the parties amended the Contract to include a change from 30-days' notice of termination to 60-days' notice of termination; and (2) StratMar was entitled to severance payment for the additional 60-days.

StratMar's contentions do not relate to the ambiguity of the contract but, rather, an interpretation of the 30-day versus 60-day notice provision in Article X. *Carolina Cas. Ins. Grp., LLC*, 2011 WL 1135948, at *4 ("a term is not ambiguous merely because two parties offer substantially different interpretations"). Because the Contract is not ambiguous, this Court should not entertain any extrinsic to determine the intent of the parties.[9] Instead, the Court must look to the express contractual terms, as contained in the four corners of the Contract, to

---

[9] In this regard, StratMar would like to introduce extrinsic evidence pertaining to Mr. Zinno's thoughts and interpretation of the Contract as it relates to payment post-termination. Specifically, StratMar would like to introduce evidence of Mr. Zinno's incorrect belief – a belief that he had in May, 2013 and has since determined to have been incorrect – that FES was required to be pay StratMar severance under the terms of the Contract. However, this extrinsic evidence is not admissible, as the Contract is not ambiguous, as admitted by StratMar. Even if the evidence were admissible, it could not be introduced to add to or contradict the terms of the Contract. Since there is no payment term contained in the Contract, it would be improper to introduce this evidence to suggest that such a term was part of the Contract.

determine whether a breach occurred.  Here, the express terms, coupled with StratMar's admissions, demonstrate no such breach has occurred.

> **b.**  **An Application Of The Parol Evidence Rule Demonstrates That StratMar Is Not Entitled To Any Payment Or Severance Regardless Of Whether The Notice Provision Is 60- Or 90-Days.**

For arguments sake, Defendant will assume that the Contract contained a 60-day notice of termination provision.[10]  First, StratMar did not negotiate a severance payment term to the Contract.  (Charas Depo., Exhibit 1, p. 70) (admitting that StratMar did not negotiate a severance payment term); (Sullivan Depo., Exhibit 2, pp. 14, 16-18).  Second, Defendant was permitted to require StratMar to immediately cease work on May 10, 2013. (Exhibit C, Amended Complaint, p. 5, Article X(B)).[11]

Article X governs the termination of the Contract and plainly permits FES to terminate the Contract, at any time without cause and for its own convenience.  (Exhibit C, Amended Complaint, p. 5, Article X(B)); (Charas Depo., Exhibit 1, p. 66) (admitting that FES could terminate the agreement per Article X(B)).  In order to terminate the Contract, Article X(B) required FES to give StratMar 60-days written notice (FES contends that the Contract only required 30-days written notice, but will assume that 60-days was agreed upon for this argument).  Importantly, Article X(B) then states that after providing written notice of termination, StratMar shall have "no further recourse to [FES], other than payment for work completed and all reimbursable expenses incurred through and including the <u>effective date of</u>

---

[10] FES is only assuming 60-days' notice was agreed to for arguments sake.  FES expressly states that 60-days' notice of termination was not agreed to, but was a part of the New SOW that was being reviewed by FES' Legal and Supply Chain Departments at the time the Contract was termination on May 10, 2013.  (*See* Sullivan Depo., Exhibit 2, pp. 60-61, 83-84, 86, 88, 94, 103, 114-116, 119).

[11] It should also be noted that FES is alleged to have breached the Contract not by terminating it, but by requiring StratMar to immediately cease work on May 10, 2013.  (StratMar Depo., Exhibit 4, pp. 78-79).

termination." (*See* Exhibit C, Amended Complaint, p. 5) (emphasis added). StratMar has likewise admitted to agreeing to this section, as written. (Charas Depo., Exhibit 1, p. 72)

Article X(B) must be read in conjunction with Article X(C), which states "[a]fter receiving notice of termination . . . and except as otherwise directed by [FES], [StratMar] shall: (1) stop the work on the date and to the extent specified therein." (*See* Exhibit C, Amended Complaint, p. 5) (emphasis added). FES was well within its rights to require immediate cessation of work by StratMar on May 10, 2013. In fact, Article X(C), through the use of the phrase "except as otherwise directed by [FES]," demonstrates that FES could direct StratMar otherwise regarding termination, should it so choose.

Importantly, the parties did not use the term "effective date of termination" in Article X(C)(1), as they chose to use in Article X(B). This is not by mistake. The intent of the parties in using these two different terms was for purposes of effectuating the wind down period without incurring any additional expenses for work. In other words, the parties agreed that StratMar would cease work on the date specified in the notice of termination letter.[12] Thereafter, StratMar would wind down the affairs of the contracted work and FES would only be responsible for the work completed and the reimbursable expenses incurred through the "effective date of termination," which would be 60-days from the notice date. Here, FES paid for all work performed through May 10, 2013, and even overpaid for two days in May. (*See* StratMar's Amended Responses to FES' discovery requests, attached hereto and incorporated herein as Exhibit 5, p. 7, Answer to Interrogatory No. 7). The only other recourse StratMar had was for reimbursable expenses incurred during the wind down of the contracted work through the effective date. StratMar admits that it stopped working on May 10, 2013 and that it performed

---

[12] Or "except as otherwise directed by [FES]."

no further services after that date.  (Exhibit 5, p. 7, Answer to Interrogatory No. 7).  Whether it be 30-days or 60-days, StratMar received from FES in money or as a credit, all monies to cover reimbursable expenses.  (Charas Depo., Exhibit 1, p. 136).[13]

Accordingly, a plain reading of the Contract demonstrates the parties agreed to a two-step termination process: (1) StratMar would immediately cease working on the date it received notification of termination; and (2) then StratMar would wind down the affairs through the "effective date of termination."   Regardless of the length of the termination notice, FES would still only pay for "work completed and all reimbursable expenses" and never make any severance payment, because the parties never contracted for any form of "severance payment." (Charas Depo., Exhibit 1, p. 70) (admitting that StratMar did not negotiate a severance payment term); (Sullivan Depo., Exhibit 2, pp. 14, 16-18).  Accordingly. FES is entitled to summary judgment on Count I of Plaintiff's Amended Complaint.

### c.    Plaintiff's Implied-in-Fact Contract Claim Is Barred By The Parties' Express, Written Contract.

The Sixth Circuit has made clear that "the distinctive feature of an implied in fact contract is that it is implied from conduct and circumstances."  *See Conglomerated Hosts, Ltd. v. Jepco, Inc*., 953 F.2d 1384, *6 (6th Cir. 1992) (emphasis added).  In other words, an implied-in-fact contract is not a contract reduced to writing, as that would be considered an express contract, but rather is a contract created by conduct or circumstances.  Cases within the Sixth Circuit have expounded upon this fundamental principle and have further held that "an implied contract may not be found if there is an express contract between the same parties on the same subject matter."

---

[13] Despite StratMar's admissions, and despite the admittedly "very straightforward" Contract language, StratMar claims that it was entitled to severance payment through the effective date of termination.   This cannot possibly be the case, as: (1) StratMar admits that it never negotiated for such a payment term to be part of the Contract; and (2) the clear language states that the only monies due and owed to StratMar after termination are "payment for work completed and all reimbursable expenses."

*See Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (Mich. Ct. App. 2006) (referencing 42 C.J.S., Implied and Constructive Contracts, § 34, p. 33).  A party cannot plead breach of express and implied contract claims in the alternative where "the parties admit that a contract exists, but dispute its terms or effect . . ."  *See Ford Motor Co. v. Ghreiwati Auto*, 945 F.Supp.2d 851, 871 (E.D.Mich. 2013).  Ohio state law also follows these same general rules.[14]  *See Nussbaum v. Wooster Baptist Temple*, 95 Ohio App. 421, 422-23 (9th Dist. 1953) (discussing the theory that "there cannot be an express and an implied contract for the same thing existing at the same time . . . a petition which pleads both, directed toward the same subject matter, creates an inconsistency in the allegations and is bad pleading") (citations omitted).

Here, Plaintiff's claim for breach of an express contract (Count I) and breach of an implied-in-fact contract (Count II) both involve the New SOW.  Indeed, Plaintiff states that the "New SOW constitutes a valid and enforceable express contract . . ."  (Doc #: 31, p. 8, ¶ 41) and then also states that the "New SOW constitutes a valid and enforceable implied-in-fact contract . . ."  (Doc #: 31, p. 9, ¶ 46).  The New SOW can only be one or the other – express and implied contracts are mutually exclusive.  Likewise, Defendant does not dispute that a written New SOW, reduced to writing, was being discussed, negotiated, and not yet approved by FES' Legal and Supply Chain Departments.  (*See* Affidavit of Suzanne Sullivan ("Sullivan Aff."), attached hereto and incorporated herein as Exhibit 6, p. 2, ¶¶ 9-11).  Indeed, Defendant will go as far as admitting that a proposed New SOW existed.  (Sullivan Aff., Exhibit 6, p. 2, ¶ 9).  The only dispute involving the New SOW, which is embodied in a written agreement (as alleged by Plaintiff through attaching it to the Amended Complaint as Exhibit H),[15] is the execution, effect,

---

[14] *See* fn. 8, *supra*.

[15] (*See* Doc #: 31, p. 5, ¶ 24).

12

and terms thereof. Defendant only disputes, therefore, that the proposed New SOW was executed and that its terms were agreed-upon and enforceable. (Sullivan Aff., Exhibit 6, p. 2, ¶ 11).

Therefore, Plaintiff is not entitled to plead these two contract theories in the alternative, and Defendant FES is entitled to summary judgment on Plaintiff's Count II for breach of implied-in-fact contract. *See Ford Motor Co.*, 945 F.Supp.2d at 871.

### ii. Count III (Promissory Estoppel).

Plaintiff's promissory estoppel count is nothing more than a repackaging of its claim for breach of implied-in-fact contract. For the reasons stated above, Plaintiff's promissory estoppel count should be dismissed. Furthermore, Plaintiff's promissory estoppel count should be dismissed because of the following uncontested facts:

(1) The New SOW was submitted to FES' Legal and Supply Chain Departments for review and approval and no written agreement was ever executed. (*See* Charas Depo., Exhibit 1, pp. 100-101, 109, 111-112, 117);

(2) Upon notice of termination, StratMar was required to cease working immediately and would have no further recourse other than "payment for work completed and all reimbursable expenses." (*See* Exhibit C, Amended Complaint, p. 5); (Charas Depo., Exhibit 1, p. 72); and

(3) StratMar was notified throughout the relationship in 2012 and 2013 of FES' concerns with the StratMar program and, specifically, regarding StratMar's long-term viability, which contradicts StratMar's claims that FES represented to it that a New SOW had been agreed to containing the 60-day notice provision. (*See* Deposition Transcript of Mark Andrade ("Andrade Depo."), attached hereto and incorporated herein as Exhibit 7, pp. 85-86, 89, 95, 102, 116-117, 120-121, 123-124, 126-127, 129).[16]

StratMar's misrepresentations, as contained in the Amended Complaint, are mere allegations. Through its own admissions (and the admissions of its employee, Mr. Andrade),

---

[16] This is particularly true when coupled with StratMar's admissions, as stated above. Likewise, Mr. Andrade is a current employee of StratMar and, thus, his testimony can be given great weight as he has an incentive to provide testimony that is helpful to StratMar.

StratMar conceded that FES informed StratMar that the New SOW, containing the 60-day notice of termination provision, was being reviewed by FES' Legal and Supply Chain Department, and that no agreement could be finalized before such review was complete.   In fact, FES' Supply Chain Department was heavily reviewing and redrafting the proposed New SOW when the termination occurred on May 10, 2013.  (Sullivan Aff., Exhibit 6, p. 2, ¶ 13).   The parties were nowhere near reaching an agreement on the proposed New SOW on account of these major revisions.   (Sullivan Aff., Exhibit 6, p. 2, ¶ 14).    Accordingly, Defendant FES is entitled to summary judgment on Count III for promissory estoppel, as StratMar's own admissions demonstrate no misrepresentations occurred.

### iii.    Count IV (Unjust Enrichment).

StratMar claims FES was unjustly enriched because it received an uncompensated benefit by way of StratMar's "hiring, training and developing a field sales force for sales to fourteen markets and providing field sales services for FES to those fourteen markets pursuant to the New SOW." (Doc #: 31, p. 10, ¶ 56).  StratMar's own admissions, however, show StratMar received compensation over-and-above what was required under the Contract when FES prepaid for Invoices through June 15, 2013 prior to the May 10th termination.   Indeed, the following admissions demonstrate StratMar did not render any uncompensated benefit to FES:

(1)    StratMar stopped working on May 10, 2013 and it performed no further services under the Contract after that date. (Exhibit 5, p. 7, Answer to Interrogatory No. 7);

(2)    StratMar admits it overbilled FES for work in May on account of this immediate cessation of work.  (Exhibit 5, p. 7, Answer to Interrogatory No. 7);

(3)    Despite not providing any further work to FES after May 10, 2013, StratMar's own Invoices demonstrate that FES paid StratMar for expected work under the parties' Contract through and including June 15, 2013. (Exhibit 3);

(4)     Despite being paid in advance for "salary" through June 15, 2013, StratMar determined not to use any portion of FES' salary payment for its employees' severance and/or salaries.  (Charas Depo, Exhibit 1, pp. 72, 151, 170-71); and

(5)     StratMar received all the money necessary to pay for any reimbursable expenses incurred in the winding down of the business.  (Charas Depo., Exhibit 1, pp. 136).

StratMar received <u>over half a million dollars for work that it never performed</u>.  Rather than pay its employees' salaries or any form of severance, StratMar deposited the money in its general accounts (Charas Depo, Exhibit 1, pp. 72, 151, 170-71); (StratMar Depo., Exhibit 4, pp. 123-124).  Now, StratMar is seeking more money for work it never performed, pursuant to a payment term that StratMar acknowledged it never negotiated, and pursuant to an agreement StratMar acknowledged was never signed.  This cannot stand.  Because FES is the one that conferred an extra benefit to StratMar in excess of $500,000, Defendant FES is entitled to summary judgment on Count IV for unjust enrichment.

### iv.     Counts V (Negligent Misrepresentation) And VI (Fraudulent Inducement).

#### a.     The Existence Of A Contract Excludes The Opportunity To Present The Same Case As A Tort Claim.

FES is entitled to summary judgment on Plaintiff's Counts V and VI because these claims are predicated on conduct arising out of a purported breach of contract.  As discussed *supra*, in this diversity case, this Court's task is "to determine the most likely disposition of the issues under Ohio law."  *HDM Flugservice GmbH*, 332 F.3d  at 1029.  Under Ohio law, "a breach of contract does not create a tort claim."  *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (9th Dist. 1996) (citing *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)).  Importantly, "'the existence of a contract action generally excludes the opportunity to present the same case as a tort claim.'"  *Thornton v. Cangialosi*, S.D.Ohio No.

15

2:09-CV-585, 2010 WL 2162905, *2 (May 26, 2010) (quoting *Wolfe*, 647 F.2d at 710).  This is true, unless "the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed."  *Textron Fin. Corp.*, 684 N.E.2d at 1270.  Even where a separate duty is demonstrated, any such tort claim "must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of the contract."  *Id*. (emphasis in original).

Here, Plaintiff's negligent misrepresentation claim is entirely based on allegations about the execution and enforcement of an alleged contract – the New SOW – as well as alleged agreed upon terms.  (*See* Doc #: 31, p. 11, ¶¶ 61-62).  The negligent misrepresentation claims are based on FES' alleged breach of the New SOW, wherein Plaintiff claims FES failed to exercise reasonable care by only providing Plaintiff with 30-days' notice of termination, rather than 60-days' notice, as allegedly contained in the New SOW.  (*See* Doc #: 31, p. 11, ¶¶ 64-65).  Similarly, Plaintiff's fraudulent inducement claim is entirely predicated on alleged representations made by FES to StratMar relative to the execution, negotiation, and performance of an alleged contract – the New SOW.  (*See* Doc #: 31, pp. 11,-13, ¶¶ 69-76).

Here, the mere existence of the Contract, StratMar's allegations that the New SOW was a "contract," and StratMar's claims for breach (Counts I and II), collectively demonstrate that StratMar is not entitled to bring a separate cause of action sounding in tort.  *See Thornton*, 2010 WL 2162905, at *2.  To overcome this general rule, Plaintiff must demonstrate that: (1) FES breached a duty owed separately from the duties created by the Contract; and (2) Plaintiff suffered damages separate and distinct from the damages suffered by the alleged breach of contract.  *See Textron Fin. Corp.*, 684 N.E.2d at 1270.  Plaintiff cannot and has not demonstrated these two elements.

16

Although separate claims for negligent misrepresentation and/or fraudulent inducement can be pled in conjunction with contract claims, a separate duty and distinct damages must be demonstrated.  First, Plaintiff's Amended Complaint is devoid of any allegation that Defendant FES owed Plaintiff a separate duty other than those duties arising from the parties' Contract, as no such independent duty exists.  The parties' relationship is solely contractual.  This is unquestionably demonstrated by StratMar's reliance on the New SOW in both its negligent misrepresentation and fraudulent inducement claims.  Second, Plaintiff has not pled (or even alleged) damages that are separate and in addition to the damages arising from the alleged breach of contract claims.

In fact, StratMar's Rule 30(b)(6) deposition demonstrates the alleged tort damages all arise from the alleged breach of contract.  (*See* StratMar Depo., Exhibit 4, pp. 73-74).  These alleged tort damages include: (1) failure to pay the final bill (any duty of which arises under the Contract);  (2) factoring which, as StratMar admits, was necessary due to FES' failure to pay the final bill; (3) legal expenses that were incurred "in an attempt to have FES pay its bills;" and (4) other "soft cost[s]."  (*Id*.).  These alleged tort damages are all connected to the contractual agreement between the parties and have certainly been maintained as damages under Plaintiff's breach of contract theories.

Because a contract exists here, Defendant FES is entitled to summary judgment on Plaintiff's tort claims (Counts V-VI).  No exception to this general rule exists, as Plaintiff has failed to allege a separate duty owed by FES other than the duties arising under the Contract, and has further failed to demonstrate separate and distinct damages for its tort claims.  This Court should dismiss Counts V and VI in their entirety.

**b.**    **Plaintiff's Tort Claims Are Also Barred By The Economic Loss Doctrine.**

Summary judgment on Plaintiff's Counts V and VI is also appropriate under the well-established economic loss doctrine.  This rule "prevents recovery in tort of damages for purely economic loss."  *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 108 Ohio St.3d 412, 414, 835 N.E.2d 701, 704, (2005) (citing *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 537 N.E.2d 624 (1989)).  *See also Floor Craft Floor Covering, Inc. v. Parma Comm. Gen. Hosp. Ass'n*, 54 Ohio St.3d 1, 560 N.E.2d 206 (1990); *HDM Flugservice GmbH*, 332 F.3d at 1028 (differentiating among the three general kinds of damages for "personal injury, property damage, or economic damage").  In this regard, "where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule . . . that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery."  *Chemtrol Adhesives, Inc.,* 537 N.E.2d at 630.  *See also Floor Craft Floor Covering, Inc.*, 560 N.E.2d at 211 ("Tort law is not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement").

Here, Plaintiff is only claiming pecuniary losses – there is no accompanying accident or physical damage.  Moreover, the economic loss rule bars Plaintiff's tort claims because the only duties FES owed to StratMar arose from the Contract.  *See Ineos USA, L.L.C. v. Furmanite America, Inc.*, 3d Dist. No. 1-14-06, 2014 WL 5803042, at *5 (Nov. 10, 2014) ("a tort claim must be analyzed to determine whether it is merely a recapitulation of the breach-of-contract claim or whether it alleges a breach of an independent duty") (citations omitted).  This is true regardless of whether there exists a genuine issue of material fact as to whether an amendment to the original SOW was ever agreed to or executed.  Plaintiff's pecuniary claims sounding in tort,

therefore, are barred under the economic loss doctrine and this Court should dismiss Counts V and VI.

C.  **Defendant FES Is Entitled To Summary Judgment On Counts One And Two Of Defendant's Counterclaims.**

i.  **Count One (Unjust Enrichment And/Or Quantum Meruit).**

As discussed above, Defendant FES has conferred a significant benefit to the Plaintiff through pre-paying for services through June 15, 2013.  These payments were paid prior to termination of the Contract on May 10, 2013, and were paid in anticipation of StratMar performing work under the Contract.  However, this anticipated work never occurred.  In this regard, FES overpaid StratMar $555,402.99 by way of these pre-bills that StratMar issued and FES paid prior to FES' termination of the Contract.  (*See* Exhibit 3).

The undisputed facts of this case, as evidenced by StratMar's own admissions, show FES conferred a significant benefit to StratMar, and likewise demonstrate StratMar has wrongfully, inequitably, and/or unjustly retained this benefit:

(1)  StratMar admits it stopped working on May 10, 2013 and it performed no further services under the Contract after that date. (Exhibit 5, p. 7, Answer to Interrogatory No. 7);

(2)  StratMar further admits that it overbilled FES for work in May on account of this immediate cessation of work.  (Exhibit 5, p. 7, Answer to Interrogatory No. 7);

(3)  Despite not providing any further work to FES after May 10, 2013, StratMar's own Invoices demonstrate that FES paid StratMar for expected work under the parties' Contract through and including June 15, 2013. (Exhibit 3);

(4)  In fact, StratMar was paid in advance for "salary" through June 15, 2013 and StratMar determined not to use any portion of that salary to pay severance and/or salaries to its employees.  (Charas Depo, Exhibit 1, pp. 72, 151, 170-71); and

(5)     StratMar deposited FES' payment in excess of $500,000 in its general accounts (Charas Depo, Exhibit 1, pp. 72, 151, 170-71); (StratMar Depo., Exhibit 4, pp. 123-124).

Despite these admissions, StratMar now claims it was entitled to a windfall and is not required to return the $555,402.99, despite StratMar's own Invoices demonstrating the parties' course of performance was to treat pre-paid overpayments made by FES as credits (*i.e.*, refundable to FES). (*See* Exhibit 3); (Sullivan Depo., Exhibit 2, pp. 21, 24, 31, 57). Simply put: permitting StratMar to retain these monies for work it never performed would be unjust. Accordingly, FES is entitled to summary judgment on Count One of its Counterclaims, and should recover its overpayment to StratMar.

### ii.     Count Two (Breach Of Contract).

Defendant FES is likewise entitled to summary judgment on Count Two of its Counterclaims for breach of contract. Defendant's breach of contract claim consists of the following:

(1)     StratMar billed Defendant FES for salaries and other expenses after May 10, 2013, despite admitting it stopped performing services for FES on May 10, 2013 (Exhibit 5, p. 7, Answer to Interrogatory No. 7);

(2)     Article X(B) permits StratMar to recover only "payment for work completed and all reimbursable expenses." (*See* Exhibit C, Amended Complaint, p. 5); (Charas Depo., Exhibit 1, p. 72); and

(3)     StratMar billed and received payment from FES through June 15, 2013, despite performing no additional work after May 10, 2013. (Exhibit 5, p. 7, Answer to Interrogatory No. 7); (Exhibit 3); (Charas Depo, Exhibit 1, pp. 72, 151, 170-71). StratMar also overbilled FES for work in May on account of this immediate cessation of work. (Exhibit 5, p. 7, Answer to Interrogatory No. 7).

StratMar's own admissions show it has breached the parties' Contract. Permitting StratMar to retain the $555,402.99 would not only be unjust, but it would likewise be a breach of Article X of the parties' Contract. Accordingly, based on these undisputed facts and admissions

of StratMar, FES is entitled to summary judgment on Count Two of its Counterclaims, and is entitled to recover $555,402.99 plus other damages that are a direct and proximate cause of Plaintiff's breaches of the Contract.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant FirstEnergy Service Company respectfully requests that the Court grant summary judgment in its favor on Counts I through VI of Plaintiff StratMar Retail Services, Inc.'s First Amended Complaint, and further dismiss the Plaintiff's First Amended Complaint with prejudice.  Defendant also respectfully requests that the Court grant summary judgment in its favor on Counts One and Two of Defendant's First Amended Answer and Counterclaims (Docs #: 29, 32).

Respectfully submitted,

*/s/ Ronald S. Kopp*
Ronald S. Kopp (0004950)
rkopp@ralaw.com
Jessica A. Lopez (0090508)
jlopez@ralaw.com
Roetzel & Andress, LPA
222 South Main Street
Akron, OH  44308
Telephone:  330.376.2700
Facsimile:  330.376.4577

*Attorneys for Defendant,*
*FirstEnergy Service Company*

## CERTIFICATION OF CASE TRACK ASSIGNMENT

Pursuant to Local Rule 7.1(f), the undersigned certifies that this case has been assigned to the standard track and further certifies that the Memorandum in Support adheres to the page limitations set forth in Local Rule 7.1(f), as amended by this Court June 25, 2015 Order.

*/s/ Ronald S. Kopp*
Ronald S. Kopp (004950)

## CERTIFICATION OF ADHERENCE TO CASE MANAGEMENT ORDER

The undersigned certifies that on June 22, 2015, Defendant submitted a written request to StratMar to be dismissed from the above-referenced matter as a condition precedent to filing the within dispositive motion, as required by this Court's Case Management Order (Doc #: 13). On June 26, 2015, Defendant received a written response from StratMar refusing to dismiss any of its claims against Defendant. The undersigned certifies that it has a good faith basis for filing the within Motion for Summary Judgment on account of StratMar's refusal to dismiss its claims.

*/s/ Ronald S. Kopp*
Ronald S. Kopp (004950)

## <u>PROOF OF SERVICE</u>

Undersigned counsel hereby certifies that on June 29, 2015, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

*/s/ Ronald S. Kopp*
Ronald S. Kopp (004950)

9498668 _1  065329.1692