**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**
**YOUNGSTOWN, OHIO**

| | | |
|---|---|---|
| STRATMAR RETAIL SERVICES, INC. | ) | CASE NO.  5:14-CV-00780-BYP |
| | ) | |
| Plaintiff, | ) | JUDGE  BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| FIRSTENERGY SERVICE COMPANY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF STRATMAR RETAIL SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANT FIRSTENERGY SERVICE COMPANY'S COUNTERCLAIMS**

Brent S. Silverman (0062859)
*Brent.Silverman@Kaufman-Company.com*
Katherine M. Poldneff (0088529)
*Kathy.Poldneff@Kaufman-Company.com*
Ashtyn N. Saltz (0089548)
*Ashtyn.Saltz@Kaufman-Company.com*
**KAUFMAN & COMPANY, LLC**
1001 Lakeside Avenue – Suite 1710
Cleveland, Ohio  44114
PH:  216.912.5500
FX:  216.912.5501

*Attorneys for Plaintiff StratMar Retail Services, Inc.*

## TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

STATEMENT OF ISSUES ................................................................................................. iv

SUMMARY OF ARGUMENT ............................................................................................. v

MEMORANDUM OF LAW IN SUPPORT ........................................................................ 1

  I.    PRELIMINARY STATEMENT ................................................................... 1

  II.   LEGAL STANDARD FOR SUMMARY JUDGMENT ................................... 3

  III.  STATEMENT OF UNDISPUTED FACTS ..................................................... 3

      A.  Doug Zinno and Tim Hutchinson of FES Were FES' Primary Contacts With StratMar Who Reviewed and Approved StratMar's Invoices ...................................... 3

      B.  After StratMar's Termination, FES Agreed to and Approved Payment of the 30 Day Invoice ........................................................................ 4

      C.  As A Result of FES' Payment of the 30 Day Invoice, There Was No Overpayment by FES to StratMar ................................................... 7

      D.  FES Never Notified StratMar of Any Alleged Overpayments Until After the Initiation of This Litigation ......................................................... 7

  IV.  LEGAL STANDARD FOR THE APPLICATION OF THE DOCTRINE OF WAIVER ...................................................................................................... 10

  V.   STRATMAR IS ENTITLED TO SUMMARY JUDGMENT ON FES' COUNTERCLAIMS FOR UNJUST ENRICHMENT AND BREACH OF CONTRACT BASED ON ANY ALLEGED OVERPAYMENT BY FES BECAUSE THE UNDISPUTED FACTS SHOW THAT THESE COUNTERCLAIMS ARE BARRED BY THE DOCTRINE OF WAIVER ................... 12

  VI.  CONCLUSION ............................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*All Erection & Crane Rental Corp. v. Trispan Corp.*, No. 91471, 2009-Ohio-867 (8th Dist.) .......................................................................................................... 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................... 3

*Constr. Sys. v. Garlikov & Assocs.,* No. 11AP-802, 2012-Ohio-2947 (10th Dist.)..................... 11

*Cooper Tire & Rubber Co. v. Warner Mech. Corp.*, No. 5-06-39, 2007-Ohio-1357 (3d Dist.) . ........................................................................................................ 10

*Daniel E. Terreri & Sons v. Bd. of Mahoning County Comm'rs*, 152 Ohio App. 3d 95 (7th Dist. 2003). .................................................................................... 11, 15

*Freeman v. Blue Ridge Paper Prods.*, 529 Fed. Appx. 719 (6th Cir. 2013)................................. 3

*Ins. Co. of N. Am. v. Travelers Ins.Co.*, 118 Ohio App. 3d 302 (8th Dist. 1997). ...................................................................... v, 2, 10, 11, 14

*Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust, Inc.*, 156 Ohio App. 3d 65, 2004-Ohio-411 (4th Dist.) ............................................................... v, 2, 11

*Nat'l City Bank v. Rini*, 162 Ohio App. 3d 662, 2005-Ohio-4041 (11th Dist.) ..................... 11, 15

*Russell v. City of Dayton*, 2d Dist. Montgomery No. 8520, 1984 Ohio App. LEXIS 9795 (May 18, 1984)........................................................................................... 10

*State ex rel. Wallace v. State Med. Bd. of Ohio,* 89 Ohio St.3d 431 (2000)................................ 10

*White Co. v. Canton, Transp. Co.*, 131 Ohio St. 190 (1936) ............................... v, 2, 10

**Rules**

Fed. R. Civ. P. 56.............................................................................................. 1

Fed. R. Civ. P. 56(c) ......................................................................................... 3

## STATEMENT OF ISSUES

1.      Whether Plaintiff StratMar Retail Services, Inc. ("StratMar") is entitled to summary judgment on the counterclaim of Defendant FirstEnergy Service Company ("FES") for unjust enrichment because the doctrine of waiver bars this claim where FES is seeking to recoup a payment FES agreed to make to StratMar, and that was approved by FES' management and its legal department, over a year after such payment was made.

2.      Whether StratMar is entitled to summary judgment on FES' counterclaim for breach of contract based on an alleged overpayment FES made to StratMar because the doctrine of waiver bars this claim where FES is seeking to recoup a payment FES agreed to make to StratMar, and that was approved by FES' management and its legal department, over a year after such payment was made.

## SUMMARY OF ARGUMENT

StratMar is entitled to summary judgment on FES' counterclaim for unjust enrichment, as well as the portion of FES' counterclaim for breach of contract based on StratMar's allegedly improper billing of FES after StratMar's termination, because such claims are barred by the doctrine of waiver. Both of these counterclaims are based on FES' argument that FES allegedly overpaid StratMar after StratMar's termination by FES, and that FES is entitled to recoup this alleged overpayment. However, the evidence in this case establishes that there was no overpayment. Rather, after significant review and discussion, FES' management and legal department made a considered and reasoned choice to compensate StratMar for thirty (30) days of a contractually required termination notice period—a choice that, pursuant to Ohio law, FES is not permitted to reconsider over a year later.

The doctrine of waiver bars claims where a party voluntarily relinquished a known right, claim, or privilege, including a contractual right. *White Co. v. Canton, Transp. Co.*, 131 Ohio St. 190, 198 (1936); *see also Ins. Co. of N. Am. v. Travelers Ins.Co.*, 118 Ohio App. 3d 302, 318 (8th Dist. 1997). Moreover, the doctrine of waiver by estoppel, a subset of waiver accepted and applied by Ohio courts, bars claims where the conduct of a party is inconsistent with that party's intent to claim a right and misleads the other party to its prejudice. *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust, Inc.*, 156 Ohio App. 3d 65, 2004-Ohio-411, ¶ 57 (4th Dist.). In this case, the testimony of FES' own witnesses confirms that it is undisputed that: (1) FES agreed to pay StratMar for thirty (30) days of any applicable termination notice period; (2) FES approved the invoice StratMar issued to FES for thirty (30) days of any applicable termination notice period; and (3) despite numerous communications between the parties regarding post-termination issues, for over a year, and not once prior to the commencement of this litigation, did

FES notify StratMar that FES had made any alleged overpayment or that FES sought to recoup such alleged overpayment.  As a result, regardless of whether FES was contractually obligated to make a payment for thirty (30) days of any required termination notice period, after careful consideration, FES agreed to do so and, for over a year after approving the payment, never claimed that it was entitled to recoup such payment.  This conduct is intentional, voluntary, and entirely inconsistent with FES' arguments in this litigation that FES is now entitled to recoup the payment for the thirty (30) day termination notice period, and such inconsistency has prejudiced StratMar.

Accordingly, FES' counterclaims for both unjust enrichment, and breach of contract based on an alleged overpayment, are barred by the doctrine of wavier, and StratMar is entitled to summary judgment on these claims as a matter of law.

<u>**MEMORANDUM OF LAW IN SUPPORT**</u>

**I.      <u>PRELIMINARY STATEMENT</u>**

Pursuant to Fed. R. Civ. P. 56, Plaintiff StratMar Retail Services, Inc. ("StratMar") moves this Court for partial summary judgment on the counterclaims of Defendant FirstEnergy Service Company ("FES") for unjust enrichment and breach of contract based on any alleged overpayment by FES to StratMar because these counterclaims are barred by the doctrine of waiver.

In February 2012, StratMar and FES executed a contract whereby StratMar, a small, family-owned business, would provide staffing, sales, and management services to FES, a large nationwide energy company, in a variety of markets.  This original contract included a thirty (30) day termination notice provision.  In or about the first several months of 2013, StratMar and FES agreed to the terms of, and began performing pursuant to, a new contract with an expanded scope of work, which included a sixty (60) day termination notice provision in consideration of StratMar's expanded scope of work.

On May 10, 2013, FES notified StratMar that FES was terminating StratMar without cause, and subsequently, FES paid StratMar an amount agreed to by the parties for thirty (30) days of any applicable termination notice period based on an invoice dated May 17, 2013 (the "30 Day Invoice") that StratMar issued to FES for the agreed amount.  Key FES employees, including both management and representatives from FES' in-house legal department, reviewed and approved the 30 Day Invoice.  The primary issue in this litigation, which forms the basis of StratMar's contractual claims, is whether FES owes StratMar an *additional* payment to compensate StratMar for the entire applicable sixty (60) day termination notice period, which was part of the new contract under which the parties had been performing in early 2013 and at

1

termination.  The issue has never been—and still is not—the propriety of FES' post-termination payment to StratMar pursuant to the 30 Day Invoice because it has always been clear that the parties jointly agreed to that payment.

Despite these facts, in its First Amended Answer and Counterclaims (the "Counterclaim"), FES alleged both a claim for unjust enrichment and a claim for breach of contract based on allegations that FES overpaid StratMar post-termination and that FES is entitled to recoup such alleged overpayment.  These claims are barred as a matter of law by the doctrine of waiver, which precludes a party from bringing claims where a party voluntarily relinquished a known right, including a contractual right.  *White Co. v. Canton, Transp. Co.*, 131 Ohio St. 190, 198 (1936); *see also Ins. Co. of N. Am. v. Travelers Ins. Co.*, 118 Ohio App. 3d 302, 318 (8th Dist. 1997).  The doctrine of waiver by estoppel, a subset of waiver, also bars claims where the conduct of a party is inconsistent with that party's intent to claim a right, and where such conduct misleads the other party to the other party's prejudice.  *See Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust, Inc.*, 156 Ohio App. 3d 65, 2004-Ohio-411, ¶ 57 (4th Dist.).

In this litigation, the undisputed facts confirm that:  (1) FES made a considered decision to, and agreed to, pay StratMar pursuant to the 30 Day Invoice; (2) FES approved the 30 Day Invoice at various levels, including approval by both management and FES' legal department; and (3) even though the parties spent months after StratMar's termination corresponding regarding post-termination payments, not once prior to the commencement of this litigation did FES notify StratMar that FES made any alleged overpayment (based on a lack of approval of the 30 Day Invoice or otherwise) or that FES sought to recoup any such payment.  This undisputed conduct is intentional, voluntary, and entirely inconsistent with FES' counterclaims for unjust

enrichment and breach of contract, which are based on the argument that FES is now, well over a year later, entitled to recoup the payment it agreed to pursuant to the 30 Day Invoice—an inconsistency that is highly prejudicial to StratMar.  In fact, the undisputed facts make clear that FES is only bringing its counterclaims with respect to recouping payment of the 30 Day Invoice as a strategic legal maneuver, initiated by outside counsel only after the commencement of this litigation, in an attempt to gain leverage and increase the cost and risk of the litigation to StratMar in an attempt to force StratMar not to pursue its valid claims in this case.

As a result, there are no genuine issues as to any material facts regarding the application of the doctrine of waiver to FES' counterclaims for unjust enrichment, and for breach of contract based on any alleged overpayments by FES to StratMar.  Accordingly, StratMar is entitled to summary judgment on these counterclaims as a matter of law.

## II.  **LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also Freeman v. Blue Ridge Paper Prods.*, 529 Fed. Appx. 719, 722-23 (6th Cir. 2013).

## III.  **STATEMENT OF UNDISPUTED FACTS**

### A.  **Doug Zinno and Tim Hutchinson of FES Were FES' Primary Contacts With StratMar Who Reviewed and Approved StratMar's Invoices**

On February 6, 2012, StratMar and FES executed a contract that contained a 30 day termination notice provision.  *See* the Deposition of Alfred Douglas Zinno, Oct. 30, 2014 ("Zinno Dep.") at 45:4-48:20, 57:25-59:2, and Ex. 1 thereto, the transcript and relevant exhibits of which are attached as Exhibit A to the Declaration of Katherine M. Poldneff in Support of

StratMar's Motion for Partial Summary Judgment ("Poldneff Dec."). Although in early 2013, the parties were negotiating, and performing pursuant to, the terms of a revised contract, the facts regarding such subsequent contract are in dispute.

Under all relevant contracts and agreements between StratMar and FES, FES prepaid StratMar for its services, and then that prepayment was applied to StratMar's actual billings. *See* Zinno Dep. at 60:22-25 (Poldneff Dec., Ex. A); Deposition of Timothy Hutchinson, Apr. 13, 2015 ("Hutchinson Dep.") at 144:14-146:10, the transcript and relevant exhibits of which are attached as Ex. B to the Poldneff Dec. As of 2013, Doug Zinno, Manager of the MCI Program for FES, and Tim Hutchinson, who reported to Mr. Zinno, were FES' primary contacts with StratMar who worked with FES on a day-to-day basis. *See* Zinno Dep. at 27:1-8, 41:3-7, 42:7-17 (Poldneff Dec., Ex. A); Hutchinson Dep. at 25:18-26:2, 62:6-23 (Poldneff Dec., Ex. B). When StratMar submitted monthly invoices to FES, Mr. Hutchinson would review them and then submit them to Mr. Zinno for approval. *See* Hutchinson Dep. at 20:13-25 (Poldneff Dec., Ex. B); Deposition of Thomas Schmuhl, Apr. 1, 2015 ("Schmuhl Dep."), at 97:8-20, the transcript of which is attached as Ex. C to the Poldneff Dec.; Deposition of Suzanne Sullivan, Apr. 7, 2015 ("Sullivan Dep.") at 9:17-10:1, the transcript and relevant exhibits of which are attached as Ex. D to the Poldneff Dec. In 2012-2013, only one level of approval was required. Sullivan Dep. at 9:17-10:1 (Poldneff Dec., Ex. D).

**B.** **After StratMar's Termination, FES Agreed to and Approved Payment of the 30 Day Invoice**

On May 10, 2013, FES notified StratMar that FES was terminating its contract with StratMar. *See* Doc# 29, Counterclaim, ¶ 5, attached as Ex. E to the Poldneff Dec; Zinno Dep. at 211:1-9 (Poldneff Dec., Ex. A); Hutchinson Dep. at 137:7-138:5 (Poldneff Dec., Ex. B). Following StratMar's termination, FES had internal discussions regarding whether FES would

compensate StratMar for thirty (30) days of any applicable termination notice period. Hutchinson Dep. at 158:24-160:2, and Exhibit 23 thereto (Poldneff Dec., Ex. B).  In fact, after StratMar's termination, Tim Hutchinson was tasked with finalizing all StratMar invoicing, and he obtained and reviewed all necessary information related to finalizing such invoicing.  Id. at 140:3-6, 141:25-142:9 (Poldneff Dec., Ex. B).  Because at the time of StratMar's termination FES had prepaid StratMar for services through June 15, 2013, Hutchinson asked his boss, Mr. Zinno, and Thomas Schmuhl, FES' Director of Sales to whom Mr. Zinno reported, how the prepayment should be handled.  Id. at 143:22-144:13, 147:20-149:13, and Ex. 21 thereto (Poldneff Dec., Ex. B).

Subsequently, FES internally discussed not paying StratMar for thirty (30) days of any applicable termination notice period and, instead, seeking a credit of $500,000; however, FES made a decision not to pursue such a credit.  Id. at 151:1-12 (Poldneff Dec., Ex. B).  FES never raised the issue of seeking such a credit with StratMar.  *See* Id. at 179:20-180:8 (Poldneff Dec., Ex. B); Sullivan Dep. at 32:13-33:8, 34:17-35:23, 160:25-161:16, and Ex. 5 thereto (Poldneff Dec., Ex. D).  Ultimately, Mr. Hutchinson participated in a telephone conference with Mr. Schmuhl, Mr. Zinno, and representatives of FES' legal department in which FES discussed whether FES was required to pay StratMar through the thirty (30) day termination notice period, and in or about the end of May 2013, FES determined that it would pay StratMar for this period. Hutchinson Dep. at 149:14-150:7, 151:1-3, 159:2-15, 164:19-166:14, and Ex. 25 thereto (Poldneff Dec., Ex. B).  The decision to pay for thirty (30) days of the termination notice period was made by Mr. Hutchinson's "boss and the group" at FES, including "Doug [Zinno], Tom [Schmuhl], and legal."  Id. at 174:15-175:5 (Poldneff Dec., Ex. B); *see also* id. at 151:16-18

(testifying FES' legal department made the decision to pay StratMar through thirty (30) days of the termination notice period).

As a result of FES' internal decision to pay StratMar for thirty (30) days of any applicable termination notice period, FES and StratMar reached an agreement that FES would make the thirty (30) day payment to StratMar.  Id. at 153:25-154:9 (Poldneff Dec., Ex. B). Virginia O'Hanlon of StratMar prepared an invoice, dated May 17, 2013, to reflect the agreed upon payment (the "30 Day Invoice"), and Tim Hutchinson confirmed that the invoice contained the correct amount.  Id. at 151:16-152:1, 152:16-154:2 and Ex. 22 thereto (the 30 Day Invoice) (Poldneff Dec., Ex. B).  After verifying the accuracy of the 30 Day Invoice, reviewing and approving it, Tim Hutchinson provided the 30 Day Invoice to Doug Zinno for approval.  Id. at 156:13-24 (Poldneff Dec., Ex. B); FES' Amended Response to StratMar's Interrogatory No. 13 (admitting that Tim Hutchinson reviewed and approved the 30 Day Invoice) (Poldneff Dec., Ex. F).  Mr. Zinno then reviewed and approved the 30 Day Invoice.  FES' Amended Response to StratMar's Interrogatory No. 13 (admitting that Doug Zinno reviewed and approved the 30 Day Invoice) (Poldneff Dec., Ex. F)[1]; Zinno Dep. at 231:1-232:6, 235:21-237:6, and Ex. 24 thereto (the 30 Day Invoice) (Poldneff Dec., Ex. A).  Mr. Hutchinson was never notified by anybody at FES that the 30 Day Invoice was not accurate.  Hutchinson Dep. at 157:25-158:3 (Poldneff Dec., Ex. B).

---

[1] In FES' original response to Interrogatory No. 13 requesting that FES identify all persons at FES who, *inter alia*, reviewed and approved the 30 Day Invoice and their role related thereto, FES answered that in addition to Tim Hutchinson and Doug Zinno, Mr. Schmuhl, FES' Director of Sales, and Jerry Bellitt, FES' Vice President of Sales, also reviewed and approved the 30 Day Invoice.  FES' Responses and Answers to StratMar's Second Requests for Production and Third Set of Interrogatories Propounded on FES, at p. 8 (answer to Interrogatory No. 13), attached as Ex. G to the Poldneff Dec.  Following Mr. Schmuhl and Mr. Bellitt's depositions, during which they contradicted FES' response to that interrogatory with inconsistent testimony that they could not recall reviewing the 30 Day Invoice, FES amended its answer to Interrogatory No. 13.  *See* Poldneff Dec., Ex. F.  Interestingly, even though it went to the trouble to amend and verify the answer to Interrogatory No. 13, FES did not identify any individuals from its legal department even though Mr. Hutchinson unequivocally testified that FES' legal department made the decision to pay StratMar for thirty (30) days of any applicable termination notice period.  Id.; Hutchinson Dep. at 151-16:18 (Poldneff Dec., Ex. B).

6

C.  **As A Result of FES' Payment of the 30 Day Invoice, There Was No Overpayment by FES to StratMar**

After FES approved the 30 Day Invoice, FES did not have to make a payment to StratMar because it had already prepaid for StratMar's services through June 15, 2013 (even though StratMar was terminated on May 10, 2013); therefore, FES' credit from its pre-payment was applied to the 30 Day Invoice and the 30 Day Invoice was effectively paid.  *See* Hutchinson Dep. at 154:21-156:12, 157:8-16 (Poldneff Dec., Ex. B); Sullivan Dep. at 19:3-21:5 (Poldneff Dec., Ex. D); Zinno Dep. at 230:11-25, 237:17-24, 270:16-271:3 (Poldneff Dec., Ex. A).  After FES' credits for its prepayment through June 15, 2013 (of $255,130.00 and $235,712.50) were applied to the 30 Day Invoice, FES had a remaining credit of $11,790.44.  *See* Hutchinson Dep. at 154:21-156:12, and Ex. 22 thereto (30 Day Invoice at "Apply Credit Pre bills" and "TOTAL DUE") (Poldneff Dec., Ex. B).  This remaining credit was then applied to commissions due from FES to StratMar for work StratMar performed in May 2013 prior to its termination, resulting in a balance of $64,995 that was owed *by FES to StratMar* after payment of the 30 Day Invoice.  Id. at 157:8-16, 162:7-164:8, 166:16-169:17, and Ex. 26 thereto (Poldneff Dec., Ex. B); Zinno Dep. at 238:17-241:20, and Ex. 25 thereto (Poldneff Dec., Ex. A).  Indeed, FES paid StratMar the balance of $64,995.  Hutchinson Dep. at 168:12-19 (Poldneff Dec., Ex. B); Zinno Dep. at 238:17-242:9 (FES' counsel, Mr. Kopp, representing "that everything except for the additional 30 day invoice has been paid, and I think that both sides agree to that"), and Ex. 25 thereto (Poldneff Dec., Ex. A).

D.  **FES Never Notified StratMar of Any Alleged Overpayments Until After the Initiation of This Litigation**

Following FES' approval and payment of the 30 Day Invoice, on June 28, 2013, StratMar issued an invoice to FES to compensate StratMar for an additional thirty (30) days so that

StratMar was compensated for the full sixty (60) day termination notice period StratMar argued

applied based on the revised contract negotiated by the parties in early 2013 (the "60 Day

Invoice").  *See* Hutchinson Dep. at 173:1-174:4, and Ex. 29 thereto (60 Day Invoice) (Poldneff

Dec., Ex. B); Zinno Dep. at 242:11-244:22, and Ex. 26 thereto (Poldneff Dec., Ex. A); Sullivan

Dep. at 37:22-39:12, and Ex. 6 thereto (Poldneff Dec., Ex. D).  FES engaged in internal

discussions regarding the 60 Day Invoice and ultimately decided not to pay it.  *See* Hutchinson

Dep. at 174:5-14, 175:6-176:4 (Poldneff Dec., Ex. B); Zinno Dep. at 246:6-248:6, and Ex. 27

thereto (Poldneff Dec., Ex. A); Sullivan Dep. at 41:14-42:23 (Poldneff Dec., Ex. D).

Subsequently, in July and August 2013, StratMar and FES engaged in substantive discussions

and correspondence regarding outstanding payments due StratMar, including payment by FES of

the 60 Day Invoice.  *See* Sullivan Dep. at 142:14-148:23, 149:3-150:21 and Exs. 17 and 18

thereto (Poldneff Dec., Ex. D).  The majority of this post-termination correspondence was, in

fact, drafted by FES' internal legal department regardless of the signatory of the correspondence.

Id. at 138:3-15, 142:14-143:7, and Ex. 17 thereto (Poldneff Dec., Ex. D).  However, not once

during these communications did FES ever notify StratMar that there was a problem with FES'

payment of the 30 Day Invoice or that FES was seeking to recoup that payment.  *See* Id. at

148:20-23 and Exs. 17 and 18 thereto (Poldneff Dec., Ex. D).

 Specifically, on July 16, 2013, Suzanne Sullivan, a Supply Chain specialist at FES who

was responsible for the StratMar relationship, sent StratMar a letter regarding FES' response to

StratMar's contention that FES owed StratMar an additional payment pursuant to the 60 Day

Invoice to compensate StratMar for the full sixty (60) days of the applicable termination notice

period.  *See* Id. at 142:14-143:18, and Ex. 17 thereto (Poldneff Dec., Ex. D).  Ms. Sullivan

admitted that although she signed this letter, she did not write it, and it was ghostwritten by Fred

Leffler, an attorney in FES' legal department.  *See Id.* at 142:14-24 (Poldneff Dec., Ex. D).

Despite being written by FES' attorney, nowhere in this letter does FES demand that StratMar

pay back any amount of money that FES had previously paid to StratMar.  Id. at 148:20-23

(Poldneff Dec., Ex. D).  In fact, FES never notified StratMar of any claim that FES allegedly

overpaid StratMar until after the initiation of this litigation by StratMar.  *See* Hutchinson Dep. at

179:20-180:8 ("The only time I had discussions [that the 30 Day Invoice was not in fact owed or

should not have been paid] was in the presence of attorneys" after the initiation of the litigation")

(Poldneff Dec., Ex. B); Sullivan Dep. at 32:13-33:8, 34:17-35:23, 160:25-161:16, and Ex. 5

thereto (Poldneff Dec., Ex. D).  There is not one single written communication or other

document produced in this litigation in which FES—through its employees, in-house counsel,

outside counsel, or otherwise—advises StratMar, prior to the commencement of the current

litigation, that FES had a claim against StratMar to recoup any payments FES previously had

made to StratMar.

The first time that FES notified StratMar of its claims relating to any alleged

overpayments by FES to StratMar, including the payment of the 30 Day Invoice, was in this

litigation.  Specifically, in its Counterclaim, FES alleged a claim for unjust enrichment based on

the alleged benefit FES conferred on StratMar via its prepayment for the post-termination period

of May 13, 2013 through June 15, 2013 [the prepayment that was applied to the 30 Day Invoice].

Doc# 29, Counterclaim at ¶¶ 13-14 (Poldneff Dec., Ex. E).  Similarly, FES alleged a claim for

breach of contract, that is, in part, based on StratMar's alleged breach of Article X of the parties'

agreement by StratMar's alleged billing of FES "for salaries for field sales representatives after

May 10, 2013 [the termination date]."  Id. at ¶¶ 21, 24 (Poldneff Dec., Ex. E).

As a result, it is undisputed that the parties agreed that FES would pay the 30 Day Invoice, FES approved payment of the 30 Day Invoice at various levels, including by its legal department, FES ultimately paid the 30 Day Invoice through application of the credit resulting from its prepayment for services rendered through June 15, 2013, and FES never notified StratMar that FES intended, or was allegedly entitled to, recoup payment of the 30 Day Invoice until well after the commencement of this litigation.

## IV.  LEGAL STANDARD FOR THE APPLICATION OF THE DOCTRINE OF WAIVER

The doctrine of waiver bars claims where a party engages in "a voluntary relinquishment of a known right." *State ex rel. Wallace v. State Med. Bd. of Ohio*, 89 Ohio St.3d 431, 435, 2000-Ohio-213, 732 N.E.2d 960 (2000); *White Co. v. Canton Transp. Co.*, 131 Ohio St. 190, 198 (1936).  Waiver generally requires an intention to waive the right at issue.  *See Russell v. City of Dayton*, 2d Dist. Montgomery No. 8520, 1984 Ohio App. LEXIS 9795 at *9 (May 18, 1984). The doctrine of waiver may apply to both contractual and quasi-contractual claims such as unjust enrichment.  *See, e.g., White Co. v. Canton Transp. Co.*, 131 Ohio St. at 198 ("Waiver as applied to contracts is a voluntary relinquishment of a known right."); *All Erection & Crane Rental Corp. v. Trispan Corp.*, No. 91471, 2009-Ohio-867, ¶ 21 (8th Dist.).

In *Insurance Co. of N. Am. v. Travelers Ins. Co.*, 118 Ohio App. 3d 302, 318 (8th Dist. 1997), the appellate court reversed the lower court's grant of summary judgment to plaintiff insurer because the doctrine of waiver barred plaintiff's reimbursement of the settlement money it previously paid on behalf of the insured.  Specifically, the appellate court found that plaintiff's *voluntary* decision to continue settlement negotiations even though it had no coverage on the insured's claim barred plaintiff's recoupment of the settlement payment.  *Id*.  The court further

found that the plaintiff's situation was "of its own making because of its lack of diligence in failing to reserve its right and unexplained delay in determining its coverage obligations." *Id.*

A "waiver" may be found in a variety of circumstances, including waiver by estoppel. *See Cooper Tire & Rubber Co. v. Warner Mech. Corp.*, 3d Dist. Hancock No. 5-06-39, 2007-Ohio-1357, ¶16. Waiver by estoppel "exists when the acts and conduct of a party are inconsistent with an intent to claim a right, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it." *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust, Inc.*, 156 Ohio App. 3d 65, 2004-Ohio-411, ¶ 57 (4th Dist.); *see also Daniel E. Terreri & Sons v. Bd. of Mahoning County Comm'rs*, 152 Ohio App. 3d 95, 110 (7th Dist. 2003) (referring to the doctrine of waiver by estoppel as "implied waiver"). "Waiver by estoppel allows a party's inconsistent conduct, *rather than a party's intent*, to establish a waiver of rights." *Nat'l City Bank v. Rini*, 162 Ohio App. 3d 662, 2005-Ohio-4041, ¶ 24 (11th Dist.) (emphasis added). For example, under the doctrine of waiver by estoppel, "a party to a contract may waive the right to literal compliance with the terms of the contract by engaging in actions or a course of conduct inconsistent with literal compliance." *Daniel E. Terreri & Sons*, 152 Ohio App. 3d at 110.

In *Constr. Sys. v. Garlikov & Assocs.*, the court found that waiver by estoppel applied to a construction client's claim that payment was not due until the construction was completed. No. 11AP-802, 2012-Ohio-2947, ¶ 47 (10th Dist). The court held that the making of periodic payments and allowing the contractor to access funds for reimbursement was entirely inconsistent with the claim that payment was not due until work was to be completed. *Id.*

11

**V.    STRATMAR IS ENTITLED TO SUMMARY JUDGMENT ON FES'
        COUNTERCLAIMS FOR UNJUST ENRICHMENT AND BREACH OF
        CONTRACT BASED ON ANY ALLEGED OVERPAYMENT BY FES BECAUSE
        THE UNDISPUTED FACTS SHOW THAT THESE COUNTERCLAIMS ARE
        BARRED BY THE DOCTRINE OF WAIVER**

StratMar is entitled to summary judgment on FES' counterclaims for unjust enrichment
and breach of contract based on any alleged overpayment by FES because the undisputed facts
show that these counterclaims are barred by the doctrine of waiver.  Both FES' counterclaim for
unjust enrichment and a portion of its counterclaim for breach of contract are based on the
allegations that (1) StratMar pre-billed FES for services through June 15, 2013, which StratMar
ultimately did not perform because it was terminated on May 10, 2013; and (2) FES overpaid
StratMar pursuant to the pre-bills and is entitled to recoup such overpayments.  *See* Doc# 29,
Counterclaim ¶¶ 13-15, 21, 24 (Poldneff Dec., Ex. E).  However, the doctrine of waiver bars
both of these claims because (1) FES intended to make all of the payments it made to StratMar
and did so voluntarily; (2) FES' claims related to recoupment of its payments to StratMar are
entirely inconsistent with the conduct FES exhibited for over a year with respect to the
payments; and (3) given FES' prior conduct, allowing FES to recoup the payments now would
be highly prejudicial to StratMar.

As an initial matter, in bringing these counterclaims, FES attempts to frame them
conceptually as payments due to FES because they were paid to StratMar for services that were
never actually rendered by StratMar during the post-termination period.  Yet, FES fails to take
into account that even though FES initially prepaid StratMar for services pre-billed through June
15, 2013, subsequently, this prepayment (or credit) was applied to compensate StratMar for
thirty (30) days of the applicable termination notice period, pursuant to the 30 Day Invoice, as
well as commissions for StratMar's actual sales in May 2013—compensation that FES both

12

agreed to and approved prior to application of the credit.  Therefore, StratMar's retention of the pre-billed amount was *not* for services StratMar ultimately did not render, as alleged by FES, but properly for amounts owed to StratMar and subsequently agreed to by the parties.

The undisputed facts in this case show that (1) FES intended to make all of the payments it made to StratMar, and made such payments voluntarily; and (2) FES' conduct with respect to the prepayments through June 15, 2013 and their application is entirely inconsistent with the counterclaims FES now alleges to recoup such prepayments.  First, the undisputed facts show that in May 2013, FES had substantive internal discussions, including management and representatives of its legal department, regarding paying StratMar for thirty (30) days of any applicable termination notice period, and ultimately decided and agreed to pay StratMar for this period.  This was FES' reasoned, *intentional*, and presumably legally supported choice at that time.

Second, the undisputed facts show that as a result of FES' decision to pay StratMar for thirty (30) days of any applicable termination notice period, FES approved and paid StratMar's 30 Day Invoice.  Tim Hutchinson of FES, the day-to-day point person for FES' relationship with StratMar, worked with StratMar to verify the accuracy of the 30 Day Invoice, and then, *at least* both he and his superior, Doug Zinno, reviewed and approved it.  As such, FES' prepayments for pre-bills through June 15, 2013 were used as credits and properly applied to pay the 30 Day Invoice.  The small remaining credit to FES of $11,790.44 was applied to pay the May commissions earned by StratMar's employees for the actual sales they made—commissions that, again, FES reviewed and approved, and regarding which there has never been a dispute.  After the application of these credits, there was absolutely no remaining amount due to FES.  In fact, FES owed StratMar a balance of $64,995, which FES ultimately paid.

Third, the undisputed facts show that prior to the commencement of this litigation, FES never notified StratMar that FES contended it made any overpayments to StratMar, or that FES was entitled to any recoupment of its prior payments.  In fact, the testimony of FES' employees, Tim Hutchinson and Suzanne Sullivan, confirms that FES only began discussing and crafting its argument for recoupment of its prior payments in mid-2014, over a year after it had first considered and then agreed to such payments, and after StratMar commenced this litigation. There is no testimony or documentation in this case to the contrary.  These facts are especially telling because they show that, at the time FES agreed to pay StratMar for the 30 Day Invoice and for an entire year thereafter, FES never believed it had overpaid StratMar.  It is clear that through admittedly creative lawyering and revisionist history, FES has framed counterclaims for unjust enrichment and breach of contract in order to gain leverage in this litigation and attempt to stop StratMar from pursuing its legitimate claims against FES, and to claw back a significant and much-needed payment from a small, struggling company over a year after it had been agreed to and paid.

Based on these undisputed facts, the doctrine of waiver applies to bar FES' counterclaims because FES made a conscious, considered choice, involving both FES' management and internal legal department, to pay the 30 Day Invoice and May commissions.  FES made these payments both intentionally and voluntarily.  FES cannot now, over a year later, simply change its mind, and even if it does so, that does not render FES' payments, when made, any less intentional or voluntary.  *See Ins. Co. of N. Am. v. Travelers Ins. Co.*, 118 Ohio App. 3d at 318 (where party's "lack of diligence in failing to reserve its right and unexplained delay in determining its contractual obligations" resulted in waiver when the party took prior voluntary actions inconsistent with its obligations).

14

Additionally, due to FES' conscious, considered choice to pay the 30 Day Invoice and May commissions, its prior conduct is entirely inconsistent with FES' current claim that it has the right to recoup any of its payments. Importantly, waiver by estoppel bars FES' counterclaims even in the event that FES now claims that its decision to pay the 30 Day Invoice was a mistake or was not required by any contract at issue because the application of waiver by estoppel does not require intent, only prior inconsistent conduct. *See Nat'l City Bank v. Rini*, at ¶ 24 ("Waiver by estoppel allows a party's inconsistent conduct, *rather than a party's intent*, to establish a waiver of rights) (emphasis added); *Daniel E. Terreri & Sons*, 152 Ohio App. 3d at 110 ("a party to a contract may waive the right to literal compliance with the terms of the contract by engaging in actions or a course of conduct inconsistent with literal compliance").

Moreover, the undisputed facts show that given FES' prior conduct, allowing FES to recoup its alleged overpayments now would be highly prejudicial to StratMar. StratMar is a small, family-owned business that suffered significant financial hardship as a result of its termination by FES, and FES' payment of the 30 Day Invoice was crucial to StratMar's survival in the summer of 2013. The undisputed facts set forth above show that after StratMar's termination, FES communicated with StratMar regarding the 30 Day Invoice, agreed to pay it, and paid it. StratMar relied on FES' actions as well as the resulting payment of over $400,000, which is a significant amount of money to StratMar. Allowing FES to attempt to claw back this payment now, over two years later, when it was never disputed by FES prior to this litigation, would severely prejudice StratMar.

Accordingly, as a matter of law, StratMar is entitled to summary judgment on FES' counterclaims for unjust enrichment and breach of contract based on any alleged overpayments by FES because such claims are barred by the doctrine of waiver.

15

VI.    **CONCLUSION**

StratMar respectfully requests that the Court grant this Motion in its entirety, and grant partial summary judgment in favor of StratMar on (1) FES' counterclaim of unjust enrichment; and (2) the portion of FES' counterclaim for breach of contract related to FES' allegations that FES overpaid StratMar and that FES is entitled to recoup such alleged overpayment.

Respectfully submitted,

*/s/ Brent S. Silverman*
Brent S. Silverman (0062859)
*Brent.Silverman@Kaufman-Company.com*
Katherine M. Poldneff (0088529)
*Kathy.Poldneff@Kaufman-Company.com*
Ashtyn N. Saltz (0089548)
*Ashtyn.Saltz@Kaufman-Company.com*
KAUFMAN & COMPANY, LLC
1001 Lakeside Avenue – Suite 1710
Cleveland, Ohio  44114
PH:  216.912.5500
FX:  216.912.5501

*Attorneys for Plaintiff StratMar Retail Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing was electronically filed this 29th day of June 2015.  Notice of filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Brent S. Silverman* _____

*One of the Attorneys for Plaintiff StratMar Retail Services, Inc.*

17