**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**
**YOUNGSTOWN, OHIO**

| | | |
|---|---|---|
| STRATMAR RETAIL SERVICES, INC. | ) | CASE NO.  5:14-CV-00780-BYP |
| | ) | |
| Plaintiff, | ) | JUDGE  BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| FIRSTENERGY SERVICE COMPANY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF STRATMAR RETAIL SERVICES, INC.'S MEMORANDUM OF LAW IN**
**SUPPORT OF ITS OPPOSITION TO DEFENDANT FIRSTENERGY SERVICE**
**COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Brent S. Silverman (0062859)
*Brent.Silverman@Kaufman-Company.com*
Katherine M. Poldneff (0088529)
*Kathy.Poldneff@Kaufman-Company.com*
Ashtyn N. Saltz (0089548)
*Ashtyn.Saltz@Kaufman-Company.com*
**KAUFMAN & COMPANY, LLC**
1001 Lakeside Avenue – Suite 1710
Cleveland, Ohio  44114
PH:  216.912.5500
FX:  216.912.5501

*Attorneys for Plaintiff StratMar Retail Services, Inc.*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES .......................................................................................................... iii

MEMORANDUM OF LAW IN SUPPORT .................................................................................. 1

I.    PRELIMINARY STATEMENT ...................................................................................... 1

II.    STATEMENT OF FACTS ............................................................................................. 2

III.    LEGAL STANDARD FOR SUMMARY JUDGMENT .................................................. 5

IV.    LAW AND ARGUMENT .............................................................................................. 5

    A.  FES Is Not Entitled to Summary Judgment On Any of StratMar's Claims ................ 5

    1.    The Parol Evidence Rule Does Not Apply to Bar StratMar's Contract Claims, and There Are Genuine Issues of Material Fact as to StratMar's Breach of Contract and Breach of Implied-in-Fact Contract Claims That Preclude Summary Judgment ............... 5

    2.    StratMar's Implied-in-Fact Contract Claim is Not Barred by the Existence of Its Express Contract Claim Because Parties are Permitted to Plead in the Alternative ......... 10

    3.    StratMar is Entitled to Plead Its Promissory Estoppel Claim in the Alternative, and Genuine Issues of Material Fact Exist Which Preclude Summary Judgment on This Claim....................................................................................................................................13

    4.    Genuine Issues of Material Fact Exist Regarding StratMar's Claim for Unjust Enrichment That Preclude Summary Judgment ..................................................................... 18

    5.    FES Is Not Entitled to Summary Judgment on StratMar's Tort Claims ................... 19

      a.    StratMar's tort claims are not barred by the existence of its breach of contract claims ................................................................................................................................... 19

      b.    The economic loss doctrine does not bar StratMar's tort claims ....................... 22

    B.  FES Is Not Entitled to Summary Judgment on Its Counterclaims ............................ 23

V.    CONCLUSION............................................................................................................. 25

CERTIFICATE OF SERVICE ................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Academic Imaging, LLC v. Soterion Corp.*, 352 Fed. App'x. 59, 65 (6th Cir. Ohio 2009)............ 6

*Awada v. Univ. of Cincinnati*, 83 Ohio Misc. 2d 100, 104 (Ohio Ct. Cl. 1997).......................... 14

*Bonner Farms, Ltd. v. Power Gas Mktg. & Transmission*, No. 04-2188, 2006 U.S. Dist. LEXIS 100943, at *20 (N.D. Ohio Aug. 17, 2006) ........................................................................... 14

*Brown v. Columbus All-Breed Training Club*, 152 Ohio App.3d 567, 573 (Ohio Ct. App. 2003)  6

*Cal. Fitness I, Inc. v. Lifestyle Family Fitness, Inc.*, 433 Fed. App'x. 329, 337 (6th Cir. 2011) ... 6

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ...................................................................... 5

*Clemens v. Nelson Fin. Group, Inc.*, 2015-Ohio-1232, ¶ 36. (Ohio Ct. App. 2015) .................... 23

*Dayton v. City R. Co.*, 12 Ohio Dec. 258, 287 (Ohio C.P. 1902). .................................................. 7

*Ford Motor Co. v. Ghreiwati Auto*, 945 F. Supp. 2d 851, 871 (E.D. Mich. 2013) ................. 11-12

*Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St. 3d 353, 362, (Ohio 1997)................................................................................................................ 8

*Galmish v. Cicchini*, 90 Ohio St. 3d 22, 27-28 (Ohio 2000) ........................................................ 6

*Green v. Jackson Nat'l Life Ins. Co.*, 195 Fed. App'x. 398, 404 (6th Cir. 2006) ......................... 15

*Gus Hoffman Family L.P. v. David*, 2007-Ohio-3968, ¶¶ 8 (Ohio Ct. App. 2007) ..................... 16

*In re All Kelley & Ferraro Asbestos Case*, 104 Ohio St.3d 605, 614, (Ohio 2004) ...................... 8

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 517 F. Supp. 2d 832, 847-848 (E.D. La. 2007).................................................................................... 20

*Ins. Co. of N. Am. v. Travelers Ins.Co.*, 118 Ohio App. 3d 302, 318 (Ohio Ct. App. 1997)........ 24

*King v. Hertz Corp.*, No. 1:09 CV 2674, 2011 U.S. Dist. LEXIS 35610, *8 (N.D. Ohio March 31, 2011) ......................................................................................................................................... 20

*Lincoln Elec. Co. v. St Paul Fire and Marine Ins. Co.*, 210 F.3d 672, 684 (6th Cir. 2000)........... 6

*Malempati v. Indep. Inpatient Physicians, Inc.*, 2013-Ohio-3543, ¶ 27 (Ohio Ct. App. 2013) ... 16

*Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust, Inc.*, 156 Ohio App. 3d 65, 92-93 (Ohio Ct. App. 2004) ..............................................................................................................24-25

*Mesaros v. Firstenergy Corp.*, No. 5:04 CV 2451, 2005 U.S. Dist. LEXIS 22558, *26 (N.D. Ohio Oct. 5, 2005) .................................................................................................. 23

*MTH Holdings Corp. v. OTC Servs.*, No. 5:14 CV 605, 2015 U.S. Dist. Lexis 5183, *11-12 (N.D. Ohio Jan. 15, 2015)................................................................................................. 8

*Nussbaum v. Wooster Baptist Temple*, 95 Ohio App. 421, 422-23 (Ohio Ct. App. 1953) ...... 12-13

*Onyx Envtl. Servs., LLC v. Maison*, 407 F. Supp. 2d 874, 879 (N.D. Ohio 2005) ................ 20, 23

*Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854 (6th Cir. 1993) ........................................................ 6

*Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641 (6th Cir. 1991)........................................ 6

*Potts v. Safeco Ins. Co.*, 2010-Ohio-2042, ¶ 21 (Ohio Ct. App. 2010) ...................................... 23

*Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 151 (Ohio Ct. App. 1996) ........................................................................................................................................ 20

*United States v. Ohio*, 787 F.3d 350, 353-354 (6th Cir. 2015)..................................................... 6

*White Co. v. Canton, Transp. Co.*, 131 Ohio St. 190, 198 (1936) ............................................... 24

## Rules

Fed. R. Civ. P. 56(c) .................................................................................................................... 5

Ohio Civ. R. 8(E)(2) .................................................................................................................. 13

<u>**MEMORANDUM OF LAW IN SUPPORT**</u>

**I.**   <u>**PRELIMINARY STATEMENT**</u>

Defendant FirstEnergy Service Company's Motion for Summary Judgment (Doc. #: 56) ("FES' Motion") must be denied in its entirety because in FES' Motion, Defendant FirstEnergy Service Company ("FES") fails to establish that it is entitled to summary judgment on any of the claims set forth in the First Amended Complaint (Doc. #: 31) (the "Amended Complaint") of Plaintiff StratMar Retail Services, Inc. ("StratMar"), or on any of FES' counterclaims.  FES' Motion—which tellingly seeks summary judgment in favor of FES on *every single claim and counterclaim* at issue in this lawsuit—is rife with misstatements and misapplications of both law and fact, which render its arguments meritless.  In its motion, FES seeks to divert the Court's attention from the central issue in this litigation, which forms the basis of StratMar's contractual claims: whether FES owes StratMar an *additional* payment to compensate StratMar for the entire applicable 60 day termination notice period, which was part of the new contract under which the parties had been performing in early 2013 and at termination, because FES had already agreed to, approved at multiple levels, and paid StratMar for 30 days of such notice period.

Specifically, FES is not entitled to summary judgment on StratMar's claims or its own counterclaims for no less than the following reasons:

(1) The parol evidence rule does not apply to bar StratMar's contract claims, and there are genuine issues of material fact as to StratMar's claims for breach of contract and breach of implied-in-fact contract that preclude summary judgment;

(2) StratMar's implied-in-fact contract claim is not barred by the existence of its express contract claim because StratMar is permitted to plead these claims in the alternative;

(3) StratMar is entitled to plead its claim for promissory estoppel in the alternative, and genuine issues of material fact exist regarding both FES' representations and StratMar's reliance on these representations, which preclude summary judgment;

1

(4) Genuine issues of material fact exist as to StratMar's claim for unjust enrichment, which preclude summary judgment;

(5) StratMar's tort claims are not barred by the existence of its contract claims because the tort claims are based on an independent duty and result in different damages;

(6) The economic loss doctrine does not bar StratMar's tort claims because such claims are based on an independent legal duty; and

(7) As set forth in its Memorandum of Law in Support of StratMar's Motion for Partial Summary Judgment (Doc #: 57-1) ("StratMar's Motion"), FES is not entitled to summary judgment on its counterclaims based on any purported overpayment by FES because FES waived such claims due to its agreement to pay StratMar for 30 days of the applicable termination notice period and FES' management and legal department's approval of such payment.

Accordingly, FES has set forth absolutely no bases for summary judgment on any of StratMar's claims or FES' counterclaims, and FES' Motion should be denied in its entirety.

## II.   STATEMENT OF FACTS

StartStratMar incorporates the Statement of Undisputed Facts in StratMar's Motion (Doc #: 57-1) as if fully set forth herein.

On February 6, 2012, StratMar and FES executed a contract that contained a 30 day termination notice provision.  (*See* Deposition of Alfred Douglas Zinno ("Zinno Tr.") (Doc# 57-3) at 45-48, 57-59, and Ex. 1).  As of 2013, Doug Zinno, FES' Manager of the MCI Program, and Tim Hutchinson, who reported to Mr. Zinno, were FES' primary contacts working with StratMar on a day-to-day basis.  (*See* Zinno Tr. at 27, 41-42).  In early 2013, the parties began negotiating the terms of a new Statement of Work (the "New SOW") (Amended Compl. at Ex. H).  The New SOW contained a 60 day termination notice provision that FES never disputed during the parties' negotiations.  (Amended Compl., ¶ 43 and Ex. H at "Change Order Response"; Zinno Tr. at 203-04).  StratMar understood that under the parties' agreement, it would continue to perform services (and receive payment) through the termination notice period

2

because termination was effective at the conclusion of that period.  (Deposition of Ethan Charas ("Charas Tr.") at 71 (Doc #: 56-1)).  Although the New SOW was never formally executed by the parties[1], Mr. Zinno represented to StratMar that FES would execute the New SOW and that the paperwork would "catch up" as it did the prior year where work began before the original SOW had been signed.  (Charas Tr. at 100-02).  As of March 1, 2013, FES directed StratMar to begin performing services pursuant to the New SOW, and FES compensated StratMar pursuant to the new compensation plan that was an express part of the New SOW.  (Deposition of Timothy Hutchinson ("Hutchinson Tr.") (Doc #: 57-4) at 102-03, 115; Charas Tr. at 100-102, 110, 112, 114; Zinno Tr. at 164, 205-06).  StratMar believed it had no choice but to implement the New SOW at FES' direction.  (Charas Tr. at 100).  Additionally, throughout early 2013, although StratMar repeatedly inquired of Mr. Zinno regarding the status of StratMar's work for FES, Mr. Zinno repeatedly represented that StratMar was "fine," was doing "very good work," and that FES was "extremely pleased" with StratMar's results, even though FES had serious concerns regarding the profitability of the StratMar program and cash flow.  (30(b)(6) Deposition of StratMar (Doc #: 56-5) at 38-40, 48-50).

On May 10, 2013, FES sent a letter to StratMar stating that it was providing StratMar 30 days' notice of termination of its contract with StratMar, but the letter did not direct StratMar to stop performing services for FES on any specified date.[2]  *(*Charas Tr. at 116, Ex. 13).  During a phone call on May 10, 2013, FES expressly directed StratMar to stop performing services immediately (Charas Tr. at 79; Hutchinson Tr. at 138-39), and, in fact, shortly thereafter shut off the FES-issued iPads that allowed StratMar to perform services for FES.  (Charas Tr. at 79).

---

[1] Although FES attempts to rely on its formal processes and procedures regarding execution of documents, the course of conduct between the parties demonstrates that StratMar repeatedly performed work at FES' direction prior to the execution of formal documents, which were to come later.  (Charas Tr. at 86-90).

[2] Based on the May 10, 2013 termination notice, and under any applicable termination notice provision, StratMar's termination was effective at the conclusion of the 30 day notice period, or June 9, 2013.

Following StratMar's termination, FES had internal discussions regarding whether to compensate StratMar for 30 days of any applicable termination notice period. (Hutchinson Tr. at 158-160, Ex. 23). Mr. Hutchinson participated in a telephone conference with Thomas Schmuhl, FES' Director of Sales, Mr. Zinno, and representatives of FES' legal department in which FES discussed whether it was required to pay StratMar for 30 days of a termination notice period, and in or about the end of May 2013, FES determined that it would make this payment. (Hutchinson Tr. at 149-151, 159, 164-166, Ex. 25). The decision to pay was made by Mr. Zinno, Mr. Schmuhl, and FES' legal department. (Id. at 151, 174-175). As a result, StratMar prepared a May 17, 2013 invoice to reflect the agreed upon payment (the "30 Day Invoice"), and Mr. Hutchinson confirmed that the invoice contained the correct amount. (Id. at 151-54, Ex. 22). After reviewing and approving the 30 Day Invoice, Mr. Hutchinson sent it to Mr. Zinno, who also reviewed and approved it. (Id. at 156; FES' Amended Response to Rog. No. 13 (Doc #: 57-9); Zinno Tr. at 231-32, 235-37, Ex. 24).

Under all relevant agreements between the parties, FES prepaid StratMar for services, and prepayments were applied to StratMar's actual billings. (Zinno Tr. at 60; Hutchinson Tr. at 144-146). After FES approved the 30 Day Invoice, FES did not have to make a payment to StratMar because it had already prepaid for StratMar's services through June 15, 2013; therefore, FES' credit from its pre-payment was applied to the 30 Day Invoice, effectively paying that invoice. (*See* Hutchinson Tr. at 154-57; Deposition of Suzanne Sullivan ("Sullivan Tr.") (Doc #: 57-6) at 19-21; Zinno Tr. at 230, 237, 270-271).

Subsequently, on June 28, 2013, StratMar issued an invoice to FES for an additional 30 days so that StratMar was compensated for the full 60 day termination notice period required by the New SOW (the "60 Day Invoice"). (Hutchinson Tr. at 173-74, Ex. 29; Zinno Tr. at 242-44,

4

Ex. 26).  FES engaged in internal discussions regarding the 60 Day Invoice and ultimately decided not to pay it.  (Hutchinson Tr. at 174-76; Zinno Tr. at 246-248, Ex. 27).  In July and August 2013, StratMar and FES engaged in substantive discussions regarding outstanding payments; however, not once during these communications did FES ever notify StratMar that there was a problem with FES' payment of the 30 Day Invoice or that FES was seeking to recoup that payment.  (Sullivan Tr. at 148, Exs. 17 and 18).  In fact, the first time FES notified StratMar of its claims relating to any alleged overpayments by FES to StratMar, including the payment of the 30 Day Invoice, was only after the initiation of this litigation over a year later.

## III.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV.  LAW AND ARGUMENT

### A.  FES Is Not Entitled to Summary Judgment On Any of StratMar's Claims

#### 1.  The Parol Evidence Rule Does Not Apply to Bar StratMar's Contract Claims, and There Are Genuine Issues of Material Fact as to StratMar's Breach of Contract and Breach of Implied-in-Fact Contract Claims That Preclude Summary Judgment

In its Motion, FES argues that the parol evidence rule serves to bar extrinsic evidence regarding the parties' interpretation of any applicable termination notice provision, and that the termination provisions in the contract are unambiguous and do not require FES to make any payment to StratMar related to termination.  This argument fails because (1) FES misstates and misapplies the parol evidence rule; and (2) the meaning of the termination notice provision is ambiguous, thereby precluding summary judgment.

5

As an initial matter, FES both misstates and misconstrues the parol evidence rule.  "The parol evidence rule states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of *prior or contemporaneous oral agreements, or prior written agreements*.'" *Academic Imaging, LLC v. Soterion Corp*., 352 Fed. App'x. 59, 65 (6th Cir. 2009) (emphasis added) (internal citations omitted); *see also Galmish v. Cicchini*, 90 Ohio St. 3d 22, 27 (Ohio 2000).  "Documents created *after a contract's execution*, however, are not subject to the parol-evidence rule."  *United States v. Ohio*, 787 F.3d 350, 353-354 (6th Cir. 2015) (emphasis added) (internal citation omitted).  Therefore, while the parol evidence rule may exclude "prior or contemporaneous" evidence regarding the parties' other or related agreements, it does not, by definition, exclude extrinsic evidence regarding the parties' intent as to the meaning of express provisions in the parties' final written contract, or the parties' interpretation of those express provisions *after* the execution of the contract.[3]

Additionally, Ohio law is clear that "[i]f a contract, or, term in a contract, is reasonably susceptible to more than one meaning, then it is ambiguous and extrinsic evidence of reasonableness or intent can be employed."  *Cal. Fitness I, Inc. v. Lifestyle Family Fitness, Inc*., 433 Fed. App'x. 329, 337 (6th Cir. 2011) (internal citation omitted); *see also Lincoln Elec. Co. v. St. Paul Fire and Marine Ins. Co.*, 210 F.3d 672, 684 (6th Cir. 2000) (where contractual language is ambiguous, "the interpretation of such language…is a factual issue turning on the intent of the parties") (internal quotations omitted); *Brown v. Columbus All-Breed Training Club*, 152 Ohio App.3d 567, 573 (Ohio Ct. App. 2003) ("where the language of a contract is reasonably susceptible of more than one interpretation, the meaning of ambiguous language is a

---

[3] Importantly, many of the cases FES cites in connection with its argument regarding the parol evidence rule do not even mention the parol evidence rule and, therefore, do not support FES' assertions.  *See, e.g., Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641 (6th Cir. 1991); *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854 (6th Cir. 1993).

question of fact").  "It is a well settled rule of construction in regard to contracts which are capable of two constructions, that where the parties themselves have by their actions interpreted the contract and acted upon it, and large sums of money have been expended upon the faith of this construction of the contract, then it becomes as binding upon the parties as if it had been written in express words."  *Dayton v. City R. Co*., 12 Ohio Dec. 258, 287 (Ohio C.P. 1902).

StratMar's claim for breach of contract is based upon, *inter alia*, FES' breach of the 60 day termination notice provision of the New SOW.  (Amended Compl., ¶ 43).  Therefore, all of FES' arguments evaluating the meaning of other contractual provisions to the exclusion of the New SOW do not address StratMar's claim of breach.  (*See, e.g.,* FES' Motion at 8 (evaluating Article X of the General Terms and Conditions at Ex. C to the Amended Complaint, rather than the New SOW)).  Additionally, FES disputes that the New SOW constitutes a valid and binding express written contract (FES' Motion at 4)[4], as alleged by StratMar (Amended Compl. ¶ 41), yet makes no summary judgment argument that the New SOW is not a valid express contract as a matter of law.  This dispute alone creates a genuine issue of material fact regarding StratMar's claim for breach of express contract, which precludes summary judgment.

Further, based on the law set forth above, the relevant 60 day termination notice provision in the New SOW is ambiguous, and there are genuine issues of material fact regarding its interpretation that preclude summary judgment.  As a result, evidence regarding the parties' intent as to the meaning and subsequent interpretation of the provision is permitted.   The 60 day termination notice provision in the New SOW provides:

> Prior to [the expiration date of the New SOW], FES has the right to terminate this SOW for convenience by giving Stratmar no less than 60 days prior written notice of termination.  If FES should decide to continue

---

[4] In FES' Motion, FES defines the "Contract" to include 4 different documents but *not* the New SOW.  (FES' Motion at 3 n. 1).

> to engage the services of Stratmar, FES will notify Stratmar of its intent to extend the agreement at least 60 days prior to expiration of this SOW.

(Ex. H to Amended Compl. at "Duration of Statement of Work" in "Change Order Response").

In this case, FES claims that any termination provision agreed to by the parties requires both that (1) StratMar stop performing work immediately upon notice of termination such that StratMar is not entitled to perform services or get paid for any services performed throughout the termination notice period, and (2) StratMar is not entitled to any payment for the termination notice period itself.  (*See* FES' Motion at 11).  This interpretation renders the termination notice provision, which purpose is to protect StratMar in the event of termination, entirely meaningless because under this termination, StratMar is not entitled to either of the benefits commonly associated with termination notice provisions—namely, (1) the benefit of performing services, and getting paid, through the termination notice period, thereby allowing StratMar to prepare for an ultimate termination, or (2) the benefit of monetary compensation for the termination notice period in the event that it is not entitled to continue performing services through such period.

"In the construction of a contract courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain." *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St. 3d 353, 362 (Ohio 1997) (internal citations omitted); *see also In re All Kelley & Ferraro Asbestos Case*, 104 Ohio St.3d 605, 614, (Ohio 2004) ("Where possible, a court must construe the agreement to give effect to every provision in the agreement."); *MTH Holdings Corp. v. OTC Servs.*, No. 5:14 CV 605, 2015 U.S. Dist. Lexis 5183, *11-12 (N.D. Ohio Jan. 15, 2015).  Consequently, not only is StratMar's interpretation reasonable, but it is supported by the basic tenets of contract law which

8

require a Court, where possible, to interpret contractual provisions to give effect to every provision.

Moreover, contrary to FES' assertions, FES' own conduct confirms the ambiguity of any termination notice provision agreed to by the parties.  Timothy Hutchinson, who was one of the primary FES employees responsible for the StratMar / FES relationship in 2013, testified that following notice of StratMar's termination by FES, FES did not know how to interpret the termination notice provision but, after significant internal discussions and obtaining approval from its legal department, FES ultimately *paid* StratMar for 30 days of any applicable termination notice period:

> 20 Q. Did you ever receive a response to
> 21 your inquiry as to whether you were required to
> 22 pay through the 30-day termination period or if
> 23 you only pay for services rendered?
> 24 A. We talked about it with legal on a
> 25 phone conference.
>
> 1 Q. What was determined?
> 2 MR. KOPP: Objection to the extent
> 3 that you would be revealing any conversation
> 4 you had with anyone inside -- a lawyer anyway
> 5 inside legal. Over that objection, you can
> 6 answer.
> 7 A. To pay 30 days.
> * * *
> 1 Q. But it was determined to pay for
> 2 the 30 days, right?
> 3 A. Yes.
> 4 Q. The other thing that was on the
> 5 table was not paying for the 30 days and
> 6 seeking a credit of $500,000, right?
> 7 A. Yes.
> 8 Q. A decision was made not to pursue
> 9 that avenue, correct?
> 10 A. Yes.
> 11 Q. Yes, I'm correct?
> 12 A. Yes, you're correct.
> 16 Q. Who made the decision to pay

> 17 through the 30-day termination period?
> 18 A. That was legal.
> 19 Q. So after that decision was made,
> 20 did you work with representatives of StratMar
> 21 including Virginia O'Hanlon to prepare an
> 22 invoice?
> 23 A. Yes. Well, she prepared it.

(Hutchinson Tr. at 149-51; *see also* id. at 143-44, Ex. 21; Zinno Tr. at 231-33 (admitting he thought FES was required to pay StratMar for 30 days of a termination notice period and approved such payment); StratMar's Motion at 4-6 (setting forth undisputed facts that FES agreed to, approved payment of, and paid StratMar for 30 days of any applicable termination notice period)).  Therefore, FES' own conduct shows that the termination notice provision—and whether it required a payment by FES—was ambiguous, and that, ultimately, FES and its legal department made a considered decision to pay StratMar for 30 days of the notice period.  In fact, the primary issue in this litigation is whether FES owes StratMar an *additional* payment to compensate StratMar for the entire applicable 60 day termination notice period, which was part of the New SOW under which the parties had been performing in early 2013 and at termination. The issue has never been—and still is not—whether FES owed StratMar any payment at all for the termination notice period or the propriety of FES' post-termination payment to StratMar for 30 days of any applicable termination notice period.  Accordingly, there are genuine issues of material fact regarding the meaning of the termination notice provision and its requirements that preclude summary judgment on StratMar's claim for breach of contract.

      **2.**      **StratMar's Implied-in-Fact Contract Claim is Not Barred by the Existence of Its Express Contract Claim Because Parties are Permitted to Plead in the Alternative**

Next, FES incorrectly argues that StratMar's implied-in-fact contract claim (Count II) is barred by the mere existence of StratMar's express contract claim (Count I).  (FES' Motion at

11-13).  FES makes this argument based on purported case law that an implied contract and an express contract between the same parties regarding the same subject matter may not exist at the same time and that a party purportedly cannot plead both claims in the alternative.  (Id.).  FES' argument fails because FES both misinterprets and misapplies the relevant case law.

First, FES cites *Ford Motor Co. v. Ghreiwati Auto*, 945 F. Supp. 2d 851, 871 (E.D. Mich. 2013), which applies Michigan rather than Ohio law, for the proposition that "[a] party cannot plead breach of express and implied contracts claims in the alternative where '*the parties admit that a contract exists*, but dispute its terms or effect . . .'" (FES' Motion at 12) (emphasis added). In fact, the Court in *Ford Motor Co.* made clear that "alternative pleading of an implied contract claim is only allowed in a contract setting *where a party doubts the existence of a contract*."  945 F. Supp. 2d 851, 871 (E.D. Mich. 2013) (emphasis added).  As FES itself acknowledges, the key question is if "the parties admit that a contract exists" because if there is a dispute as to this question, pleading in the alternative is permitted.  Here, the key dispute is—and has always been—whether the New SOW, containing the 60 day termination provision, is a valid and existing contract between the parties.  StratMar claims that it is, and FES claims that it isn't. Despite the semantic maneuvers in FES' Motion to try to shoehorn the facts of this case into the verbiage of *Ford Motor Co.*, FES still admits that it disputes that the New SOW is an express written contract:  "The only dispute involving the New SOW…is the *execution*, effect, and terms thereof."  (FES Motion at 12-13) (emphasis added).[5]  By disputing the "execution" of the New SOW, FES is disputing whether the New SOW is a valid and binding express written contract

---

[5] FES' attempts to use its "admission" "that a **proposed** New SOW existed" (FES' Motion at 12 (emphasis added)) as evidence that "the parties admit that a contract exists," as required by *Ford Motor Co. v. Ghreiwati Auto*.  This "admission" is of no import or effect because it merely means that there was some written draft of the New SOW that the parties negotiated.  However, it does not constitute the key, necessary admission to bar pleading an implied contract in the alternative—namely, that the New SOW is a valid, existing contract between the parties, which the parties both acknowledge.  That is an admission that FES does not—and has never—made in this case.

between the parties.  This is precisely why StratMar has pled—and is entitled to plead—an implied contract claim in the alternative, and nothing in *Ford Motor Co.* holds otherwise.

In further support of its argument that StratMar is not permitted to plead in the alternative, FES cites *Nussbaum v. Wooster Baptist Temple*, 95 Ohio App. 421, 422-23 (Ohio Ct. App. 1953) which applies Ohio law and "discuss[es] the theory that 'there cannot be an express and an implied contract for the same thing existing at the same time . . . a petition which pleads both, directing toward the same subject matter, creates an inconsistency in the allegations and is bad pleadings.'"  (FES' Motion at 12).  FES' citation to *Nussbaum* is, at best, misleading because *Nussbaum* stands for the entirely opposite proposition that there is no principle of Ohio law that bars a party from pleading both express and implied contract claims in the alternative or that compels such a party to elect upon which such claim to proceed:

> From a reading of some Ohio cases, it may possibly be inferred that the practice **in bygone years** in this state, under our system of Code pleading, required an election in actions of this character, on the theory that there cannot be an express and an implied contract for the same thing existing at the same time, and therefore a petition which pleads both, directed toward the same subject matter, creates an inconsistency in the allegations and is bad pleading.
>
> In our examination of the cases, however, we do not find any in which  the Supreme Court of this state has ever directly made such a declaration, and it is the thought of the members of this court that the rules hereinafter stated, which reflect the overwhelming weight of authority in this country, should be declared the law of the states.
>
> "***when the plaintiff has two or more distinct reasons for obtaining the relief sought, or when there is more or less uncertainty as to the grounds of recovery or as to the exigencies of proof, the petition may set forth a single claim in more than one count.  The pleader may state his case in as many ways as he sees fit in separate counts in order to meet any possible phase of the evidence, and he will not be required to elect on which count he will proceed**."
>
> * * *

'***Our code provides that a plaintiff may unite several causes of action in the same complaint when they all arise out of contract, express or implied.'

'Had plaintiff desired to do so, he could properly have alleged in the complaint an express contract stipulating the price and an implied contract for the reasonable value of the lumber by stating the same separately and, if the same had been stated separately, **he could not have been compelled to elect whether to proceed upon one or the other**.'

95 Ohio App. 421, 422-24 (Ohio Ct. App. 1953) (internal citations omitted) (emphasis added).

Additionally, Ohio Civ. R. 8(E)(2) makes clear that parties are permitted to plead in the alternative: "A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses . . . A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds." Therefore, contrary to FES' assertions, Ohio law is clear that parties may plead both express and implied contract claims in the alternative.

Here, StratMar is bringing its implied-in-fact contract claim in the alternative—if this Court were to find that the New SOW did not constitute an express written contract between the parties, in the alternative, the Court still could find that the New SOW constituted an implied-in-fact contract. Such alternative pleading is both permitted and commonly employed, and FES cites no law to the contrary. Therefore, the mere coexistence of both Counts I and II of StratMar's Amended Complaint does not serve as a bar to either claim, and FES' motion for summary judgment as to Count II should be denied.[6]

### 3.    StratMar is Entitled to Plead Its Promissory Estoppel Claim in the Alternative, and Genuine Issues of Material Fact Exist Which Preclude Summary Judgment on This Claim

FES further argues that StratMar's promissory estoppel claim should be dismissed because (1) StratMar is not entitled to plead this claim in the alternative to its other contractual

---

[6] Notably, FES pleads its contractual counterclaims in the alternative by bringing both a breach of contract claim and an unjust enrichment claim based on the same facts—a purported overpayment by FES to StratMar. (FES' Counterclaim at Counts I and II) (Doc #: 29).

claims; and (2) there are no genuine issues of material fact regarding StratMar's promissory estoppel claim.  (FES' Motion at 13-14).  FES is wrong as to both arguments.

First, without citing any further case law, FES argues that StratMar is not entitled to plead its claim for promissory estoppel in the alternative for the very same—and incorrect— reasons it argued with regard to StratMar's implied-in-fact contract claim.  As set forth in Section IV.A.2. *supra*, Ohio law does not prohibit pleading contract claims in the alternative where, as here, the validity of an express contract [the New SOW] is in dispute, and FES cites no law to the contrary.  The same principle is true with respect to promissory estoppel claims, which are frequently pled in the alternative to contract claims.  *See, e.g., Bonner Farms, Ltd. v. Power Gas Mktg. & Transmission*, No. 04-2188, 2006 U.S. Dist. LEXIS 100943, at *20 (N.D. Ohio Aug. 17, 2006) ("Ohio law permits that where there is a dispute as to the existence *or enforceability of a contract*, a party may plead promissory estoppel or unjust enrichment in the alternative.") (emphasis added); *Awada v. Univ. of Cincinnati*, 83 Ohio Misc. 2d 100, 104 (Ohio Ct. Cl. 1997) ("This court allows promissory estoppel claims to be argued alternatively to breach of contract claims.").  Therefore, StratMar's promissory estoppel claim should not be dismissed on this basis.

Second, contrary to FES' contentions, there are many genuine issues of material fact that preclude summary judgment on StratMar's promissory estoppel claim.  As alleged in the Amended Complaint, the crux of StratMar's promissory estoppel claim is that even if the Court finds that the New SOW is not a valid and enforceable contract, the parties still negotiated and agreed to the terms of the New SOW, and FES directed StratMar to begin working pursuant to those terms, notwithstanding that FES had not formally executed the New SOW.  (*See* Amended Compl., ¶¶ 50-54).  StratMar reasonably and justifiably relied on FES' representations,

14

including that the parties were performing pursuant to the terms of the New SOW and the 60 day

termination notice provision set forth therein, to its detriment.  (*See* id. at ¶ 52).  In fact, the

evidence in this case is clear that from March through May 2013, the parties *both* performed

pursuant to the terms of the New SOW.  In March 2013, at FES' direction, StratMar began

performing pursuant to the terms of the New SOW.  (*See* Hutchinson Tr. at 102-03 (admitting

that as of March 1, 2013, the parties operated pursuant to the new compensation plan even

though it was not executed), 115 (admitting that StratMar terminated employees as part of the

implementation of the new compensation plan); Charas Tr. at 110 (testifying that Doug Zinno,

the "said this program [the New SOW] is approved, implemented as of March 1st"), 112

(StratMar already had been implementing the terms of the New SOW for 30 days as of March

30, 2013), and 114 ("We were told 'Implement the program [in the New SOW] and legal would

have to follow.'").  Then, FES compensated StratMar for that work pursuant to the new

compensation plan that was expressly part of the New SOW.  (Zinno Tr. at 164, 205-06).

StratMar performed pursuant to the terms of the New SOW in reliance on both FES'

representations that the parties would perform pursuant to the New SOW, as well as FES'

conduct and actual performance pursuant to the New SOW.

Given the facts set forth above, there is no doubt that there are genuine issues of material

fact regarding, at the very least, the representations FES made to StratMar regarding

performance pursuant to the New SOW, as well as StratMar's reasonable and justifiable reliance

on such representations, which commonly present issues of fact that cannot be resolved on

summary judgment.  *See Green v. Jackson Nat'l Life Ins. Co.*, 195 Fed. App'x. 398, 404 (6th Cir.

2006) (summary judgment on promissory estoppel claim improper because the import of the

alleged promise and reasonable reliance stemming therefrom present questions of fact for the

jury); *Malempati v. Indep. Inpatient Physicians, Inc.*, 2013-Ohio-3543, ¶ 27 (Ohio Ct. App. 2013) (whether a promise has been made is a question of fact, and promissory estoppel essentially turns on the credibility of witnesses and the weight to be given to the evidence, which are issues primarily for the trier of fact); *Gus Hoffman Family L.P. v. David*, 2007-Ohio-3968, ¶ 8 (Ohio Ct. App. 2007) (the making, keeping, and relying upon alleged promises typically are factual issues for the jury).

Moreover, FES' citations to purportedly "uncontested facts" are of no consequence. Specifically, FES claims that the following purportedly "uncontested facts" bar StratMar's promissory estoppel claim: (1) the New SOW was submitted to FES' Legal and Supply Chain Depts. for review and approval; (2) upon notice of termination, StratMar was required to cease working immediately and have no further recourse to seek compensation[7]; and (3) StratMar was notified throughout 2012 and 2013 of FES' concerns regarding StratMar's long-term viability[8], which contradicts StratMar's claims that FES represented that a New SOW had been agreed to by the parties. (FES' Motion at 13). However, none of these purported "uncontested facts" negate the evidence that FES directed StratMar to work pursuant to the terms of the New SOW and that FES compensated StratMar pursuant to those terms. Evidence that FES informed StratMar, prior to termination, that the New SOW had been submitted to FES' Supply Chain and

---

[7] In support of this alleged "uncontested fact," FES only cites to a provision of the General Terms and Conditions to the parties original 2012 agreement (not the New Sow upon which StratMar's promissory estoppel claim is based) and to testimony that Ethan Charas of StratMar had agreed to that contract provision in 2012. These citations relate to a specific contractual term in the 2012 agreement between the parties, not the New SOW, and, as such, have no bearing upon StratMar's promissory estoppel claim which is based on the parties' agreement that they were operating under the terms of the New SOW. At most, these citations show that there may be ambiguities regarding the various terms of the parties' agreement and how such terms should be reconciled and interpreted in conjunction with one another—which, again, presents genuine issues of material fact that preclude summary judgment.

[8] The testimony of Ethan Charas, StratMar's CEO, makes clear that although certain FES employees mentioned profitability concerns in late 2012 and early 2013, when Mr. Charas repeatedly asked Mr. Zinno about such concerns, Mr. Zinno, on behalf of FES, repeatedly represented that StratMar was "fine" or doing "great". (30(b)(6) Tr. at 38-40, 48-50). Therefore, FES' own conflicting representations in different time periods create genuine issues of material fact regarding many of StratMar's claims, including its claim for promissory estoppel.

16

Legal Departments, merely presents another genuine issue of material fact regarding FES'
conflicting representations and StratMar's reliance on the same.  Moreover, even if FES'
interpretation of the evidence were true and FES did notify StratMar in 2012 and 2013 of FES'
concerns regarding StratMar's long-term viability, as FES itself states, that is merely
"contradict[ory]" evidence, which, in itself presents genuine issues of material fact that cannot be
resolved on summary judgment.

Importantly, FES' reliance on Mark Andrade's testimony on this point is both misplaced
and misleading.  As an initial matter, Mr. Andrade was an FES employee—and not a StratMar
employee—during the time period relevant to this lawsuit and claim; therefore, FES' attempt to
present him as a StratMar employee is misleading.  Also, Mr. Andrade bore absolutely no
responsibility for the StratMar / FES relationship after 2012.  (*See* the Deposition of Mark
Andrade (Doc #: 56-7) at 89 (admitting that due to a reorganization at FES in December 2012, he
handed off the StratMar business to Doug Zinno)).  As StratMar's promissory estoppel claim is
based on representations regarding the New SOW, which the parties did not begin negotiating
until January 2013 and did not finalize until March 2013, any representations made by Mr.
Andrade, who had no involvement in negotiating or implementing the New SOW, are entirely
inapposite.  The most senior representative of FES working with Stratmar on a regular basis in
2013 and who was responsible for negotiations regarding the New SOW was Doug Zinno.
(Zinno Tr., at 42, 86).  In fact, Mr. Zinno testified that he understood StratMar had a right to
rely—and would, in fact rely—on representations he made to StratMar.  (Id. at 42-43).

Accordingly, at the very least, there are many genuine issues of material fact regarding
the parties' agreement with respect to performing pursuant to the terms of the New SOW in

2013, as well as StratMar's reliance on FES' representations made in connection with this agreement, that preclude summary judgment on StratMar's claim for promissory estoppel.

### 4.    Genuine Issues of Material Fact Exist Regarding StratMar's Claim for Unjust Enrichment That Preclude Summary Judgment

FES further argues that it is entitled to summary judgment on StratMar's claim for unjust enrichment because certain purported admissions and uncontested facts show that "StratMar did not render any uncompensated benefit to FES."  (FES' Motion at 14).  FES' argument on this point is meritless because it is based on a presumption that FES is entitled to summary judgment on its counterclaims related to repayment, which are unsupported by the evidence.

FES' argument is based on the claim that FES paid StratMar through June 15, 2013, following StratMar's May 10, 2013 termination, which resulted in an overpayment that is due back to FES.  (FES' Motion at 14-15 and the purported "admissions" enumerated therein).  In sum, FES contends that it has valid counterclaims that StratMar owes payments to FES; therefore, FES cannot possibly owe payments to StratMar.  As set forth in StratMar's Motion (which StratMar incorporates herein by reference), FES did not, in fact, make any overpayments to StratMar that were not subsequently reconciled by the parties, and there is absolutely no basis upon which FES is entitled to the repayment of any money by StratMar.  Importantly, in making its argument, which is set forth in its counterclaims related to repayment, FES wholly ignores the fact that after StratMar's termination, FES agreed to pay—and, in fact, paid—StratMar for 30 days of the applicable termination notice period pursuant to an invoice regarding which it dictated the format, and that this payment was approved by FES' management and legal departments at multiple levels, thereby waiving any right by FES to recoup the payment.  As such, FES' argument that it is entitled to summary judgment on StratMar's unjust enrichment

claim because it has valid claims for repayment puts the cart before a horse that does not even exist and, therefore, is unsupportable.

Additionally, there is no doubt that genuine issues of material fact exist as to StratMar's claim for unjust enrichment.  StratMar's unjust enrichment claim is based on the facts that it performed services for FES pursuant to the terms of the New SOW, and FES retained the benefit of those services without compensating StratMar for the full 60 day termination notice period provided in the New SOW.  (Amended Compl. ¶¶ 56-59).  At the very least, in this case, there are genuine issues of material fact regarding the benefit retained by FES based on the services StratMar performed pursuant to the New SOW without receiving the agreed to benefit of 60 days' notice of termination.  Moreover, although, as set forth in StratMar's Motion, it is undisputed that FES has *not* been unjustly enriched and is not owed any payments by StratMar, at the very least, StratMar's Motion presents genuine issues of material fact regarding what payments were agreed to by the parties, and what, if any, payments are owed between the parties.  Accordingly, genuine issues of material fact exist regarding StratMar's claim for unjust enrichment, which preclude summary judgment in favor of FES on this claim.

### 5.    FES Is Not Entitled to Summary Judgment on StratMar's Tort Claims

#### a.    StratMar's tort claims are not barred by the existence of its breach of contract claims

FES also argues that it is entitled to summary judgment on StratMar's tort claims for negligent misrepresentation (Count V) and fraudulent inducement (Count VI) because these claims are barred by the existence of StratMar's breach of contract claims (FES Motion at 15-17), but FES' argument is based on a misapplication of the relevant law and facts.  Contrary to FES' assertions, StratMar's tort claims are not barred by the existence of its contractual claims both because (1) StratMar's tort claims are based on a duty independent of any contract between

19

the parties; and (2) the damages resulting from StratMar's tort and contract claims are not duplicative.

In making its argument, FES acknowledges that both tort and contract claims may coexist where "the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 151 (Ohio Ct. App. 1996); *see also* FES' Motion at 16. However, FES incorrectly applies this law to the current facts by arguing that StratMar's tort claims are not based upon the breach of an independent duty separate and apart from that created by the parties' contract.  (FES' Motion at 17).  This is patently incorrect.

"A plaintiff can maintain a tort claim for fraud in the inducement or promissory fraud occurring in a contractual relationship because both theories raise separate and independent legal duties that are considered outside of the contract." *King v. Hertz Corp.*, No. 1:09 CV 2674, 2011 U.S. Dist. LEXIS 35610, *8 (N.D. Ohio March 31, 2011); *see also In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 517 F. Supp. 2d 832, 847-848 (E.D. La. 2007) (holding that under Ohio law, a contract does not bar a claim for negligent misrepresentation).  Ohio law is clear that there is a common-law duty not to deceive a party into entering a contract or agreement that is separate and distinct from contractual duties.  *King*, 2011 U.S. Dist. LEXIS 35610 at *8; *see also Onyx Envtl. Servs., LLC v. Maison*, 407 F. Supp. 2d 874, 879 (N.D. Ohio 2005) ("Fraudulent inducement involves a general duty to avoid wrongful conduct that induces a party to enter into a contract.").

In this case, in connection with its negligent misrepresentation claim, StratMar alleges that FES represented that StratMar and FES already had agreed to the New SOW, and that FES would compensate StratMar for the full 60 day termination notice provision in the New SOW so

that StratMar would perform pursuant to the New SOW.  (Amended Compl. ¶¶ 61-63).  In connection with its fraudulent inducement claim, StratMar alleges, *inter alia*, that from on or about March 1, 2013 through on or about May 10, 2013, FES (through Doug Zinno) represented to StratMar that FES was going to execute the New SOW and that StratMar should perform services pursuant to the New SOW.  (Amended Compl. ¶¶ 73-74).  FES made such representations when it knew that FES did not intend to execute the New SOW or perform pursuant to all of its terms, including the 60 day termination notice provision, and when it, in fact, knew that it had concerns regarding StratMar's profitability such that it expected to terminate StratMar and not execute the New SOW—concerns it did not reveal to StratMar even when questioned by StratMar.  (*See* Amended Compl., ¶ 84).  As such, StratMar's claims are based on the independent duty FES owed to StratMar *not* to misrepresent FES' intentions regarding entering into the New SOW or performing pursuant to its terms in order to induce StratMar to perform services pursuant to the New SOW.  These independent duties are not based on any contract, especially to the extent that FES claims that the New SOW is not, in fact, a valid and existing contract.  Therefore, StratMar's tort claims are based on breaches of a duty owed separately from that created by contract and are, thereby, permitted under Ohio law.  Consequently, FES is not entitled to summary judgment on StratMar's tort claims on this basis.

Next, FES claims that StratMar's tort claims are barred because the damages StratMar incurred as a result of its tort claims are the same damages StratMar incurred as a result of its breach of contract claims.  (FES' Motion at 17).  FES is wrong on this point as well.  StratMar's damages related to both its breach of contract and tort claims are not duplicative.  Specifically, in connection with its breach of contract claim, StratMar is entitled to, *inter alia*, compensation for (1) the full 60 day termination notice period provided for in the New SOW, which is the key

provision of the New SOW StratMar claims FES breached; and (2) compensation for expenses

StratMar incurred as a result of winding down the business, such as damages incurred as a result

of terminating contracts that were only entered into by StratMar in connection with performing

services for FES.  (Amended Compl. ¶ 43).  However, in connection with its tort claims for

negligent misrepresentations and fraudulent inducement, StratMar is entitled to no less than the

following damages: (1) compensation for the full 60 day termination notice period agreed to by

the parties in the New SOW; (2) damages StratMar incurred as a result of FES'

misrepresentations, which may not be permitted pursuant to contract, including human resources

costs incurred as a result of both expanding its scope of services and its work force pursuant to

the terms of the New SOW and then subsequently terminating those same employees; (3)

consequential damages, which may not be permitted by contract, including those incurred as a

result of wrongful termination lawsuits of employees StratMar hired in connection with

performance pursuant to the New SOW; (4) consequential damages, which may not be permitted

by contract, including those incurred by StratMar as a result of factoring its receivables post-

termination, which were only incurred due to FES' misrepresentations and StratMar's resulting

performance pursuant to the New SOW; and (5) punitive damages and attorneys' fees permitted

for tort claims that may not be permitted for StratMar's contract claims.[9]  As such, StratMar's

damages related to both its contract and tort claims are not duplicative.  Accordingly, the Court

should deny FES' motion for summary judgment as to StratMar's tort claims on this basis.

        **b.**      **The economic loss doctrine does not bar StratMar's tort claims**

Finally, FES argues that it is entitled to summary judgment on StratMar's tort claims

because the economic loss doctrine purportedly prevents recovery in tort of damages for purely

---

[9] Although FES summarily states that all of FES' alleged tort damages "have certainly been maintained as damages under Plaintiff's breach of contract theories," FES provides no support for this statement.  (FES' Motion at 17).

economic loss.  (FES' Motion at 18).  Again, FES misstates applicable law.  The economic loss doctrine does not bar StratMar's tort claims because the economic loss doctrine does not apply to these claims under Ohio law.

Ohio law is clear that the economic loss doctrine does not bar negligent misrepresentation and fraudulent inducement claims where such claims are based on an independent duty existing separate and apart from any contractual duty.  "Although the economic-loss rule sweeps widely, it does not preclude all tort claims for economic damages."  *Clemens v. Nelson Fin. Group, Inc.*, 2015-Ohio-1232, ¶ 36. (Ohio Ct. App. 2015).  Specifically, "the economic loss rule does not apply to claims for negligent misrepresentation."  *Potts v. Safeco Ins. Co.*, 2010-Ohio-2042, ¶ 21 (Ohio Ct. App. 2010).  The economic loss doctrine also does not bar "claims for breach of fiduciary duty, *fraud*, and conversion." *Clemens*, 2015-Ohio-1232, ¶ 36 (emphasis added).  Further, the economic loss doctrine does not bar tort claims based on breaches of duties independent of contractual duties.  *Onyx Envtl. Servs., LLC v. Maison*, 407 F. Supp. 2d 874, 879 (N.D. Ohio 2005) ("Because these fraud and contract duties are distinct from one another, the economic loss doctrine is no bar to [plaintiff's] fraud claim."); *see also Mesaros v. Firstenergy Corp.*, No. 5:04 CV 2451, 2005 U.S. Dist. LEXIS 22558, *26 (N.D. Ohio Oct. 5, 2005) ("A classic case of fraudulent inducement asserts that a misrepresentation of facts outside the contract or other wrongful conduct induced a party to enter into the contract.").

As set forth in Point IV.A.5.a. *supra*, StratMar's tort claims are based on FES' independent legal duty not to make misrepresentations to StratMar.  Accordingly, the economic loss doctrine does not apply to these claims, and FES' Motion for summary judgment on this basis must be denied.

### B.    FES Is Not Entitled to Summary Judgment on Its Counterclaims

FES argues that it is entitled to summary judgment on Counts I (unjust enrichment) and II (breach of contract) of its counterclaims relating to FES' alleged overpayments to StratMar because prior to StratMar's termination on May 10, 2013, FES prepaid StratMar for services rendered through June 15, 2013 such that StratMar is now obligated to repay certain amounts to FES.  (FES' Motion at 19-21).  As set forth in StratMar's Motion, which seeks summary judgment *in favor of StratMar* on both of these counterclaims, FES' counterclaims are meritless.

As set forth in detail in StratMar's Motion, which is incorporated herein by reference, StratMar is entitled to summary judgment on FES' counterclaim for unjust enrichment, as well as the portion of FES' counterclaim for breach of contract based on StratMar's allegedly improper billing of FES after StratMar's termination, because such claims are barred by the doctrine of waiver.  Both of these counterclaims are based on FES' argument that FES allegedly overpaid StratMar after StratMar's termination by FES, and that FES is entitled to recoup this alleged overpayment.  However, the evidence in this case establishes that there was no overpayment.  Rather, after significant review and discussion, FES' management and legal department made a considered and reasoned choice to compensate StratMar for 30 days of a contractually required termination notice period—a choice that, pursuant to Ohio law, FES is not permitted to reconsider over a year later.

The doctrine of waiver bars claims where a party voluntarily relinquished a known right, claim, or privilege, including a contractual right.  *White Co. v. Canton, Transp. Co.*, 131 Ohio St. 190, 198 (Ohio 1936); *see also Ins. Co. of N. Am. v. Travelers Ins.Co.*, 118 Ohio App. 3d 302, 318 (Ohio Ct. App. 1997).  Moreover, the doctrine of waiver by estoppel, a subset of waiver applied by Ohio courts, bars claims where the conduct of a party is inconsistent with that party's intent to claim a right and misleads the other party to its prejudice.  *Mark-It Place Foods, Inc. v.*

*New Plan Excel Realty Trust, Inc.*, 156 Ohio App. 3d 65, 92-93 (Ohio Ct. App. 2004).  In this case, the testimony of FES' own witnesses confirms that it is undisputed that:  (1) FES agreed to pay StratMar for 30 days of any applicable termination notice period; (2) FES approved the invoice StratMar issued to FES for 30 days of any applicable termination notice period; and (3) despite numerous communications between the parties regarding post-termination issues, for over a year, and not once prior to the commencement of this litigation, did FES notify StratMar that FES had made any alleged overpayment or that FES sought to recoup such alleged overpayment.  As a result, regardless of whether FES was contractually obligated to make a payment for 30 days of any required termination notice period, after careful consideration, FES agreed to do so and, for over a year after approving the payment, never claimed that it was entitled to recoupment.  This conduct is intentional, voluntary, and entirely inconsistent with FES' arguments in this litigation that FES is now entitled to recoup the payment for the 30 day termination notice period, and such inconsistency has prejudiced StratMar.  Accordingly, FES' counterclaims for both unjust enrichment, and breach of contract based on an alleged overpayment, are barred by the doctrine of wavier, and StratMar is entitled to summary judgment on these claims as a matter of law.

Even if the Court does not grant StratMar's Motion, at the very least, the facts and arguments set forth therein establish that there are genuine issues of material fact regarding Counts I and II of FES' counterclaims that preclude summary judgment in favor of FES on these claims.  As such, FES' Motion for summary judgment on its counterclaims must be denied.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, StratMar respectfully requests that the Court deny FES' Motion in its entirety.

25

Respectfully submitted,


*/s/ Brent S. Silverman*
Brent S. Silverman (0062859)
*Brent.Silverman@Kaufman-Company.com*
Katherine M. Poldneff (0088529)
*Kathy.Poldneff@Kaufman-Company.com*
Ashtyn N. Saltz (0089548)
*Ashtyn.Saltz@Kaufman-Company.com*
KAUFMAN & COMPANY, LLC
1001 Lakeside Avenue – Suite 1710
Cleveland, Ohio  44114
PH:  216.912.5500
FX:  216.912.5501

*Attorneys for Plaintiff StratMar Retail Services, Inc.*

26

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing was electronically filed this 29th day of July

2015.  Notice of filing will be sent to all parties by operation of the Court's electronic filing

system.  Parties may access this filing through the Court's system.


*/s/ Brent S. Silverman* _____

*One of the Attorneys for Plaintiff StratMar Retail*
*Services, Inc.*

27