PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

STRATMAR RETAIL SERVICES, INC.,          )
                                                                    )          CASE NO. 5:14cv780
                    Plaintiff,                               )
                                                                    )
          v.                                                    )          JUDGE BENITA Y. PEARSON
                                                                    )
FIRSTENERGY SERVICE COMPANY,       )
                                                                    )          **MEMORANDUM OF OPINION AND**
                    Defendant.                            )          **ORDER** [Resolving ECF Nos. 56; 57]


          Pending before the Court is a motion for summary judgment filed by Defendant

FirstEnergy Service Company ("FES") (ECF No. 56) and a motion for summary judgment filed

by Plaintiff StratMar Retail Services ("StratMar").  ECF No. 57.  The Court has been advised,

having reviewed the record, including the parties' briefs and the applicable law.  For the reasons

that follow, the Court grants FES's motion for summary judgment as to StratMar's claims, denies

FES's motion for summary judgment as to its own counterclaims, and denies StratMar's motion

for summary judgment as to FES's counterclaims.

## I.  Factual and Procedural Background

          On February 6, 2012, StratMar and FES executed a contract (ECF No. 58 ¶ 1), which

included a Purchase Order (ECF No. 31-1), a Statement of Work ("SOW") (ECF No. 31-2),

General Terms and Conditions (ECF No. 31-3) and Supplemental Terms (ECF No. 31-4).  The

contract required StratMar to "develop, implement and manage a plan to solicit and enroll Small

and Medium size Commercial Customers on behalf of FES at specific enrollment levels and in

(5:14cv780)

specific utility markets" and to "recruit, interview, screen, hire and certify all field representatives" for the period from January 9, 2012 to December 31, 2012.  ECF No. 31-1 at 2. Pursuant to the contract's General Terms and Conditions, FES could terminate the contract with StratMar with or without cause.  Relevant to the instant dispute, Article X(B) of the General Terms and Conditions authorized FES to:

> terminate the Agreement, or suspend Consultant's [StratMar's] performance of the Work, in whole or in part, at any time without cause and for its own convenience, by giving Consultant thirty (30) days written notice, and with no further recourse to Consultant, other than payment for Work completed and all reimbursable expenses incurred through and including the effective date of termination.

ECF No. 31-3 at 5.  The General Terms and Conditions also provided in Article X(C) that, "[a]fter receiving a notice of termination or suspension and except as otherwise directed by [FES], [StratMar] shall stop the Work on the date and to the extent specified therein."  ECF No. 31-3 at PageID# 239.

The parties also agreed to FES pre-paying StratMar for service, with the prepayments being applied to the actual invoices sent to FES for approval.  ECF No. 58 ¶ 2.  Each month, StratMar sent FES an invoice that reflected the amount owed to StratMar, less any credit from prepayment.  *Id.* ¶ 16.  FES employee Tim Hutchinson would initially review each invoice before submitting them to his supervisor, Doug Zinno, for approval.  ECF No. 57-4 at PageID# 1403, p.20.  FES only required this single level of review before FES would approve an invoice.  ECF No. 57-5 at PageID# 1492–93, p.97–98.

In early 2013, StratMar and FES began to negotiate a new SOW.  The new SOW contained a 60-day termination notice provision, an increase from the 30-day notice contained in

2

(5:14cv780)

the parties' original SOW.  ECF No. 31-5 at PageID# 251.  Additionally, the new SOW provided

for changes to the staffing and compensation structure of StratMar employees making sales on

behalf of FES.  Specifically, the new SOW required StratMar to terminate the lowest-performing

10-15% of StratMar's FES sales-force.  ECF No. 56-1 at PageID# 481, p.175.  Those

salespersons retained by StratMar would then be paid under the new, more competitive,

compensation structure.  Id. at PageID# 462, p.100.

StratMar and FES employees began negotiating the terms of the new SOW in January

2013.  In a January 29, 2013 email, Ethan Charas, CEO of StratMar, attached a version of the

new SOW that included the 60-day termination notice provision and a modified compensation

structure and sent it to Doug Zinno for review.  ECF No. 31-5 at PageID# 250–51.  Zinno sent an

email to Charas on March 1, 2013 that included a draft of the new SOW containing both the

60-day termination notice provision and the modified compensation structure suggested in

Charas's email.  ECF No. 31-7 at PageID# 257.  Although the new SOW has never been signed

(ECF No. 58 ¶ 11), both sides acknowledge that FES had instructed StratMar to begin working

pursuant to the terms of the new SOW.  ECF Nos. 56-1 at PageID# 462, p.100; 57-3 at PageID#

1343, p.206.  StratMar did so, despite concerns with not having the new SOW finalized.

Between March 1 and May 10, 2013, Charas inquired into the status of the new SOW frequently,

and he states that Zinno replied that StratMar should keep working because FES's legal

department would eventually catch up.  ECF No. 56-1 at PageID# 463, p.101.  During this time

period, StratMar employees were paid in accordance with the compensation structure contained

in the new SOW.  ECF No. 57-3 at PageID# 1342, p.205.

(5:14cv780)

On May 10, 2013, FES sent notice to StratMar that it intended to terminate the parties' agreement within thirty days. ECF No. 31-10. The notice did not instruct StratMar to cease work; however, Zinno and Hutchinson called Charas that day and told him that work was to cease immediately. ECF No. 57-4 at Page ID# 1433, p.139. StratMar stopped performing work for FES on or around May 10, 2013. ECF No. 58 ¶ 13. One week later, StratMar issued an invoice to FES that reflected StratMar's belief that it was entitled to payment for the 30-day termination notice period. Id. ¶ 5. This invoice, referred to by the parties as the 30-day invoice, was reviewed by Hutchinson and submitted to Zinno for approval—as FES had done for all of StratMar's prior invoices. ECF No. 58 ¶ 6. Because FES had prepaid StratMar's services through June 15, 2015, the 30-day invoice showed that FES was entitled to an $11,790.44 credit to be applied to the next invoice. ECF No. 57-4 at PageID# 1436, p.152. StratMar applied this credit to a subsequent invoice, resulting in a balance of $64,995.12 owed to StratMar to pay employee commissions. ECF No. 58 ¶ 7. FES approved this invoice. Id.

On June 28, 2013, StratMar sent an invoice, the so-called 60-day invoice, to FES for an additional 30 days of severance pay, which StratMar believed it was entitled to under the new SOW. Id. ¶ 8. FES disputed that it owed StratMar any payment for terminating the parties' contract. Id. ¶ 9. While FES objected to paying the 60-day invoice, FES did not demand that StratMar repay the 30-day invoice at the time. ECF No. 57-6 at PageID# 1540, p.148. FES did not assert that it was entitled to repayment of the 30-day invoice until after this lawsuit commenced. ECF Nos. 57-4 at PageID# 1443, p.180; 57-6 at PageID# 1511, p.32–33.

StratMar filed a lawsuit against FES on April 10, 2014. In its original complaint,

4

(5:14cv780)

StratMar asserted five claims against FES: Breach of Express Contract, Breach of Implied in Fact Contract, Promissory Estoppel, Unjust Enrichment, and Negligent Misrepresentation.  ECF No. 1.  FES answered, but did not assert counterclaims against StratMar.  ECF No. 4.  With leave of the Court, StratMar filed an amended complaint against FES on November 26, 2014, asserting the same five claims against FES and adding a claim for Fraudulent Inducement.  ECF No. 31. FES answered and asserted counterclaims against StratMar for Unjust Enrichment, Breach of Contract, and Conversion.  ECF No. 29.

On June 29, 2015, both parties filed motions for summary judgment.  FES moved for summary judgment on StratMar's claims and on two of its own counterclaims.  ECF No. 56. StratMar moved for summary judgment on FES's counterclaims.  ECF No. 57.  Both motions for summary judgment have been fully briefed, and the matter is ripe for adjudication.

## II.  Legal Standard

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden

(5:14cv780)

of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

   After the movant makes a properly supported motion, the burden shifts to the non-moving

party to demonstrate the existence of material facts in dispute.  An opposing party may not

simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of

material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.

1995).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In

determining whether a factual issue is "genuine," the court must evaluate whether the evidence

could persuade a reasonable factfinder that the non-moving party is entitled to a verdict.  *Id.*

   To defeat a motion for summary judgment, the non-moving party must "show that there is

doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment

for the movant." *Guarino*, 980 F.2d at 403.  In reviewing a motion for summary judgment, the

court must view the evidence in the light most favorable to the non-moving party when deciding

whether a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  The

existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily

is not sufficient to defeat a motion for summary judgment.  *Klepper v. First Am. Bank*, 916 F.2d

337, 342 (6th Cir. 1990).

   The summary judgment standard does not change simply because the parties present

cross-motions. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

Cross-motions for summary judgment do not require the court to grant judgment as a matter of

law for one side or the other.  "Summary judgment in favor of either party is not proper if

6

(5:14cv780)

disputes remain as to material facts." *Id.* (quoting *Mingus Constructors, Inc. v. United States,* *812 F.2d 1387, 1391 (Fed. Cir. 1987)*).  "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Taft Broadcasting, 929 F.2d at 248* (quoting *Mingus Constructors, 812 F.2d at 1391*).

### III.  Analysis

#### A.  StratMar's Claims Against FES

FES has moved for summary judgment on each claim asserted by StratMar in its First Amended Complaint: Breach of Express Contract, Breach of Implied in Fact Contract, Promissory Estoppel, Unjust Enrichment, Negligent Misrepresentation, and Fraudulent Inducement.  For the reasons that follow, the Court grants FES's motion for summary judgment on each claim.

##### 1.  Count I: Breach of Express Contract

StratMar alleges that FES breached the new SOW when it failed to give StratMar 60 days' notice that FES was terminating the contract for convenience.  ECF No. 31¶ 43.  FES argues that the new SOW had not been accepted by FES because its Legal and Supply Chain Departments were still in the process of reviewing and approving the proposal's terms.  ECF No. 56 at PageID# 416.

"Under Ohio law, the elements for breach of contract are: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff."  *MMK Grp., LLC v. SheShells Co., LLC, 591 F. Supp. 2d 944, 963 (N.D. Ohio*

7

(5:14cv780)

2008) (citing *Thomas v. Publishers Clearing House*, 29 F. App'x. 319, 322 (6th Cir. 2002)). A valid contract requires offer and acceptance, consideration, and mutual assent. *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002). The plaintiff must also show a meeting of the minds as to the contract's essential terms. *Episcopal Ret. Homes, Inc. v. Ohio Dep't of Indus. Relations*, 575 N.E.2d 134, 137 (Ohio 1991).

Contractual interpretation requires discerning the intent of the parties, *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 875 N.E.2d 561, 566 (Ohio 2007), which is presumed to reside in the language of the contract itself. *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996). When contractual language is unambiguous, courts are required to apply the language's plain meaning. *City of St. Marys*, 875 N.E.2d at 566. "Extrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning." *Graham*, 667 N.E.2d at 952. Even when admissible, extrinsic evidence cannot be used to alter express contractual provisions. *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261–62 (Ohio 2003); *see also Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978) ("[W]here the terms in an existing contract are clear and unambiguous, [a] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.").

Contractual language is ambiguous when its meaning cannot be determined from the "four corners of the agreement," or when the language is susceptible to more than one reasonable interpretation. *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008). The contract must be construed as a whole to determine whether a specific provision of the contract is

8

(5:14cv780)

ambiguous.  *Tri–State Group, Inc. v. Ohio Edison Co.*, 782 N.E.2d 1240, 1246 (Ohio 2002).  The

key, however, is reasonable interpretation; ambiguity does not exist merely because the parties

offer substantially different interpretations.  *The Glidden Co. v. Kinsella*, 386 F. App'x. 535, 542

(6th Cir. 2010).  Silence as to a provision does not create ambiguity either.  *See Savedoff*, 524

F.3d at 763 (noting that "it is not the function of courts in Ohio to formulate a new contract for

the parties" if they did not include a term that would govern the dispute).  Finally, a provision is

not considered ambiguous because "it will work a hardship upon one of the parties thereto and a

corresponding advantage to the other."  *Dugan & Meyers Constr. Co., Inc. v. Ohio Dep't of

Admin. Servs.*, 864 N.E.2d 68, 73 (Ohio 2007) (quoting *Ohio Crane Co. v. Hicks*, 143 N.E.2d

388, 389 (Ohio 1924)).  "[I]t is not the province of courts to relieve parties of improvident

contracts."  *Id.* (quoting *Ohio Crane Co.*, 143 N.E.2d at 389).

 FES is entitled to summary judgment because StratMar has not demonstrated a breach of

the contract.  StratMar's breach of contract claim is predicated on FES's alleged breach of the

60-day termination notice provision contained in the new SOW.  ECF Nos. 31 ¶ 43; 60 at

PageID# 1627.  The record reveals that the new SOW was merely proposed and that the parties

had not formally executed its terms.  The parties stipulated that the new SOW was never signed.

ECF No. 58 ¶ 11.  Email correspondence between Doug Zinno and Ethan Charas reveals that the

changes to the SOW had not been approved by FES in late March 2013.  ECF No. 31-8 at

PageID# 266.  Charas admitted that the 60-day termination notice provision had not been

approved by FES.  ECF No. 56-1 at PageID# 638.  StratMar has not presented any evidence that

would permit a jury to find that FES had accepted the change to the notice period under the

(5:14cv780)

contract.  FES, therefore, did not breach the 60-day notice provision because it had not accepted

that term as part of the contract.  FES is entitled to summary judgment on Count I.

### 2.  Count II: Breach of Implied Contract

StratMar has also asserted a breach of implied in fact contract against FES.  According to

StratMar, the new SOW constitutes a valid and enforceable implied in fact contract, which FES

breached by failing to provide 60 days' notice of termination.  ECF No. 31 ¶¶ 46–48.  FES

argues that it is entitled to summary judgment because the contract authorized FES to instruct

StratMar to cease working immediately, regardless of how long StratMar was entitled to notice

of termination.  Moreover, because the contract does not provide for severance pay, FES argues

that StratMar was not entitled to any payments other than compensation for work performed and

reimbursement of already-incurred expenses.

An implied-in-fact contract requires the same elements as an express contract, but differ

in the form of proof used to demonstrate the elements.  *Dunn v. Bruzzese*, 874 N.E.2d 1221, 1228

(Ohio Ct. App. 2007).  Whereas assent to an express contract is manifested by offer and

acceptance, "in implied-in-fact contracts the parties' meeting of the minds is shown by the

surrounding circumstances, including the conduct and declarations of the parties, that make it

inferable that the contract exists as a matter of tacit understanding."  *Stepp v. Freeman*, 694

N.E.2d 510, 514 (Ohio Ct. App. 1997).  "To establish a contract implied in fact a plaintiff must

demonstrate that the circumstances surrounding the parties' transaction make it reasonably

certain that an agreement was intended."  *Dunn*, 874 N.E.2d at 1229.

StratMar has presented evidence that supports its contention that the parties were

10

(5:14cv780)

operating under the 60-day termination notice provision in the new SOW, even if the parties had

not formally executed it.  Although FES maintains that it had not formally executed the new

SOW, there are portions of the new SOW that the parties had implemented as of March 1, 2013.

As of that date, StratMar's employees were paid in accordance with the compensation structure

contained in the new SOW.  ECF No. 57-3 at PageID# 1342, p.205.  FES's willingness to adhere

to the new compensation structure suggests that FES had accepted the document in which those

terms appear.  It also supports Charas's testimony that Zinno had repeatedly assured him that

FES's legal department would eventually approve the terms of the new SOW.  ECF No. 56-1 at

PageID# 463, p.101.  These circumstances "make it reasonably certain" that FES and StratMar

had agreed to implement the new SOW in March.  *Dunn*, 874 N.E.2d at 1229.

Nonetheless, FES is still entitled to summary judgment because FES did not commit a

breach by terminating the contract with StratMar.  The new SOW does not contain terms that

govern the termination of the contract between FES and StratMar.  The provision that StratMar

bases its breach of contract claims on provides in full:

> This statement of work shall expire after a period of 3 years from the
> Commencement Date if both parties have not agreed in writing to extend the
> terms with annual COLAs [sic] adjustments to weekly labor billing rates, with the
> first adjustment effective at the end of the first year of this SOW.  Prior to that
> date, FES has the right to terminate this SOW for convenience by giving Stratmar
> no less than 60 days prior written notice of termination.  If FES should decide to
> continue to engage the services of Stratmar, FES will notify Stratmar of its intent
> to extend the agreement at least 60 days prior to expiration of this SOW.

ECF No. 31-8 at PageID# 277.  *See also* ECF No. 60 at PageID# 1627–28 (quoting the New

SOW).  Significantly, the new SOW does not discuss what the parties' rights and obligations are

following the notice of termination.  This does not render the new SOW ambiguous as to

(5:14cv780)

termination.  *See Savedoff*, 524 F.3d at 763 ("If the contract is silent, as opposed to ambiguous, with respect to a particular matter, it is not the function of courts in Ohio to formulate a new contract for the parties.").  By its own terms, the new SOW "is an exhibit to and is incorporated into the Master Services Agreement" between StratMar and FES.  ECF No. 31-8 at PageID# 277.  Another document in the Master Services Agreement, the General Terms and Conditions, contains the contract's termination provisions.  ECF No. 31-3.  Therefore, the new SOW, even if accepted as binding on the parties under an implied-in-fact contract theory, is governed by the General Terms and Conditions and its termination provisions.  *See* ECF No. 58 ¶ 1 (referring to both the General Terms and Conditions (Exhibit C) and the original SOW (Exhibit B) as part of the contract between StratMar and FES).

Article X(C) of the General Terms and Conditions unambiguously authorizes FES to instruct StratMar to stop work on a date of its choosing: "After receiving a notice of termination or suspension and except as otherwise directed by [FES], [StratMar] shall stop the Work on the date and to the extent specified therein."  ECF No. 31-3 at PageID# 239.  The phrase "except as otherwise directed by [FES]" reflects unambiguously an intent to vest FES with broad control over when and to what extent StratMar shall wind down the business following notice of termination.  In this instance, FES "otherwise directed" StratMar to cease work immediately, as opposed to allowing StratMar to work through the end of the notice period.  Even if StratMar were entitled to 60 days' notice under the new SOW, FES could still "otherwise direct" StratMar to stop.  FES, therefore, did not breach the contract by instructing StratMar to cease operations immediately.

12

(5:14cv780)

The contract also states unambiguously what compensation StratMar was entitled to following FES's notice of termination and instruction to cease performing work for FES. Pursuant to Article X(B), StratMar had no further recourse following notice of termination for convenience "other than payment for Work completed and all reimbursable expenses incurred through and including the effective date of termination." ECF No. 31-3 at PageID# 239. That FES paid StratMar for all work actually performed—as opposed to severance pay—and all reimbursable expenses is not in dispute. StratMar admits that it had ceased providing services after FES notified it of the termination on May 10, 2013. ECF No. 56-6 at PageID# 1126. At that time, FES had prepaid for work expected to be performed through June 15, 2013. ECF No. 58 ¶ 4. StratMar does not contend that FES has failed to pay for actual work or any reimbursable expenses. The evidence before the Court, therefore, permits only one conclusion: that FES adhered to its contractual obligations and paid StratMar for "Work completed and all reimbursable expenses." ECF No. 31-3 at PageID# 239.

StratMar argues that Articles X(B) and X(C) are ambiguous as to whether payment of severance is required because StratMar would not receive protection in the event of termination. ECF No. 60 at PageID# 1628. StratMar contends that an interpretation that does not entitle StratMar to severance deprives it of benefits commonly associated with notice periods, such as (1) the benefit of being paid for services through the notice period, or (2) the benefit of severance payment in the event it is not permitted to continue working. *Id.* This argument is unavailing. As to the first benefit, payment through the notice period, unambiguous language forecloses this benefit. Article X(C) unambiguously permits FES to direct a specific date for StratMar to cease

13

(5:14cv780)

rendering services.  That Article X(C) works a hardship on StratMar does not render the provision ambiguous.  *Dugan & Meyers Constr. Co., Inc.*, 864 N.E.2d at 73.  As to the second benefit, StratMar concedes that it did not negotiate a severance provision.  ECF No. 56-1 at PageID# 455, p.70.  Implying one would contradict the express language of Article X(B) that specifies StratMar's recourse in the event of termination: "payment for Work completed and all reimbursable expenses incurred through and including the effective date of termination."  ECF No. 31-3 at PageID# 239.

The contract authorized FES to direct StratMar to stop performing work on May 10, 2013.  It also required that FES pay StratMar only for all the work that it had completed for FES.  FES did both pursuant to express terms in the contract that remained unaffected by the new SOW changing the notice period from 30 to 60 days.  Therefore, FES did not breach the contract by refusing to pay StratMar for an additional 30 days of severance.  FES is entitled to summary judgment on Count II.

### 3.  Count III: Promissory Estoppel

StratMar next asserts a claim for promissory estoppel.  StratMar argues that FES represented that it would approve the 60-day termination notice provision and that StratMar should start working pursuant to the new SOW even though it had not yet been formally executed.  ECF No. 31 ¶ 51.  According to StratMar, it "reasonably and justifiably relied to its detriment on FES' promises and representations, including, but not limited to, FES' assurances that if FES terminated the parties relationship that FES would give Stratmar 60-days' notice of such termination," which FES ultimately did not do.  *Id.* ¶ 52.

14

(5:14cv780)

"Under Ohio's promissory estoppel doctrine, a promise that the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and that does induce such action or forbearance is binding if one can avoid injustice only by enforcing the promise." *MMK Group*, 591 F. Supp. 2d at 963 (quotation marks omitted).  A claim for promissory estoppel under Ohio law has four elements: (1) a promise, clear and unambiguous in its terms; (2) reliance on the promise by the party to whom the promise is made; (3) the reliance was reasonable and foreseeable; and (4) the party asserting estoppel has been injured by the reliance. *Anderson Inc. v. Consol, Inc.*, 348 F.3d 496, 503 (6th Cir. 2003) (quoting *Rigby v. Fallsway Equip. Co., Inc.*, 779 N.E.2d 1056, 1061 (Ohio Ct. App. 2002)).

StratMar's claim for promissory estoppel fails because it cannot demonstrate a detriment stemming from its reliance on FES's promises.  The crux of StratMar's claim is that "FES directed StratMar to begin working pursuant to [the terms of the new SOW] notwithstanding that FES had not formally executed the new SOW." ECF No. 60 at PageID# 1634.  StratMar provides no evidence that it was injured by relying on this promise, however.  If anything, the evidence shows that StratMar obtained benefits by choosing to work in reliance on FES's promise that the new SOW would be approved.  As mentioned above, the parties implemented the compensation structure contained in the new SOW despite the fact that FES had not formally executed the new SOW.  Under that new compensation system, StratMar's employees received an increase in pay for performing services for FES. ECF No. 56-1 at PageID# 462, p.98.  Although StratMar paid its employees' salaries and commissions, FES was ultimately responsible for covering that compensation. ECF No. 56-1 at PageID# 462, p.99.  Charas

15

(5:14cv780)

admitted that StratMar benefitted from this new arrangement. *Id.* In contrast, the record is devoid of any evidence of injury suffered by StratMar by operating under the terms of the new SOW prior to its execution. Therefore, StratMar cannot show a detriment stemming from its reliance on FES's promises to formally execute the new SOW. FES is entitled to summary judgment on Count III.

### 4. Count IV: Unjust Enrichment

StratMar also asserts a claim of unjust enrichment against FES. StratMar argues that it conferred a benefit on FES by performing under the new SOW before it was executed. ECF No. 31 ¶ 56. By not providing StratMar with sufficient notice of termination, StratMar argues that FES has denied StratMar the reasonable value of the benefits that it conferred, and it would be unjust to permit FES to retain that benefit without fully compensating StratMar. *Id.* ¶¶ 57–59.

A claim for unjust enrichment is a form of quasi-contract that is implied in law. *Donald Harris Law Firm v. Dwight-Killian*, 853 N.E.2d 364, 367 (Ohio Ct. App. 2006). Implied in law contracts are a legal fiction used to reach an equitable result: when a party knowingly retains a benefit conferred by another party without payment, the party conferring the benefit may pursue the reasonable value of the services rendered. *MMK Group*, 591 F. Supp. 2d at 965; *Dunn*, 874 N.E.2d at 1228. Under Ohio law, a party may recover on a claim for unjust enrichment "the reasonable value of services rendered in the absence of an express contract if denying that recovery would unjustly enrich the opposing party." *Donald Harris Law Firm*, 853 N.E.2d at 367 (emphasis in original). To state a claim for unjust enrichment, a plaintiff must prove that (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant knew of such benefit, and

16

(5:14cv780)

(3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment. *MMK Group*, 591 F. Supp. 2d at 965 (quotation marks omitted).

StratMar's claim is without merit. StratMar stipulated that FES paid it for all work that StratMar performed for FES. ECF No. 58 ¶ 12. That work performed is the benefit conferred upon FES. By its own admission, StratMar recognizes that it received payment for the work it performed for FES under their contract. As mentioned above, the contract did not require FES to pay StratMar severance for the termination period. FES, therefore, has not unjustly retained any benefit conferred by StratMar, because FES paid StratMar for all the work that it performed. FES is entitled to summary judgment on Count IV.

### 5. Counts V and VI: Negligent Misrepresentation and Fraudulent Inducement

StratMar has also asserted claims against FES for Negligent Misrepresentation and Fraudulent Inducement. StratMar argues that FES negligently represented to StratMar that the parties had agreed to the terms of the SOW, and failed to exercise reasonable care by only providing 30 days' notice. ECF No. 31 ¶¶ 60–66. StratMar also argues that FES fraudulently misrepresented to StratMar that it intended to sign the new SOW to induce StratMar to begin performing under its terms. *Id.* ¶¶ 67–93. FES has moved for summary judgment on both claims and argues that StratMar may not recast its breach of contract claim as torts.

Generally, a breach of contract does not also create a tort claim, for "'the existence of a contract action . . . excludes the opportunity to present the same case as a tort claim.'" *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996) (quoting *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)). A party may bring tort claims

17

(5:14cv780)

based on the same actions as those upon which the breach of contract claim is based if the breaching party breached a duty separate from the duty created by the contract. *Id.* (citing *Battista v. Lebanon Trotting Ass'n.*, 538 F.2d 111, 117 (6th Cir. 1976)). Additionally, "an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach of contract." *Strategy Grp. for Media, Inc. v. Lowden*, 2013 WL 1343614, at *6 (Ohio Ct. App. Mar. 21, 2013) (quoting *Textron Fin. Corp.*, 684 N.E.2d at 1270).

StratMar has not demonstrated damages that are separated from those it alleges are attributable to the breach of contract. Although StratMar lists damages that are purportedly distinct from its injuries for the alleged breach of contract (ECF No. 60 at PageID# 1642), each refers to and is contingent on obligations that FES allegedly owed under the new SOW. During his individual deposition, StratMar's CEO testified to the damages that StratMar suffered as a consequence of FES's alleged breach for failing to provide 60-days' notice of termination. Specifically, Charas identified that his company would have received payment in accordance with the "agreed-upon" notice provision, and would have made severance payments to its employees in exchange for releasing claims against StratMar. ECF No. 56-1 at PageID# 480, p.169. Charas also attributed StratMar's need to factor its account receivables to FES's alleged breach and an increased payment of unemployment insurance. ECF No. 56-1 at PageID# 480, p.171–72. StratMar also alleges that these exact damages are attributable to FES's alleged fraud. During StratMar's 30(b)(6) deposition, Charas testified that StratMar has not been paid the final bill in full, had a shortfall in cash flow that necessitated factoring, had to expend funds to fight

18

(5:14cv780)

this lawsuit and lawsuits instituted by former employees, and incurred increased unemployment payments in Ohio and Illinois. ECF No. 56-4 at PageID# 913, p.73–76. These damages are intertwined with, rather than in addition to, the damages that StratMar allegedly suffered as a result of the breach of the new SOW. *See, e.g.*, *Academic Imaging, LLC v. Soterion Corp.*, 352 F. App'x 59, 68 (6th Cir. 2009) (holding that a conversion claim failed as a matter of law when the actual damages "would necessarily be identical to those resulting from the corresponding breach of [contract]"); *B & P Co. v. TLK Fusion Entm't, LLC*, No. 3:11-CV-276, 2013 WL 693167, at *10 (S.D. Ohio Feb. 26, 2013) (noting that the actual damages alleged for breach of contract and for fraudulent and negligent misrepresentation would be "virtually identical"). Because StratMar has failed to establish damages resulting from its tort claims that are distinct from the injuries that it allegedly suffered as a result of the alleged breach of contract, StratMar may not maintain separate tort claims for the same conduct by FES. Therefore, FES is entitled to summary judgment on Count V and Count VI.

### B. FES's Counterclaims Against StratMar

FES has asserted three counterclaims against StratMar: Unjust Enrichment, Breach of Contract, and Conversion. ECF No. 29. Counterclaim One alleges that StratMar unjustly retained FES's pre-payments, in the amount of $555,402.99, because StratMar did not perform any work for FES after May 10, 2013. *Id.* ¶¶ 12–17. Counterclaim Two alleges that StratMar breached the contract twice: first by charging FES for sales representatives salaries after the date that FES had instructed StratMar to cease operations, and second by failing to return several iPads belonging to FES. *Id.* ¶¶ 18–27. Counterclaim Three alleges that StratMar wrongfully

19

(5:14cv780)

converted FES property by unlawfully retaining possession of FES's iPads.  *Id.* ¶¶ 28–33.

 Both parties have moved for summary judgment on FES's counterclaim for Unjust Enrichment, as well as the salaries portion of FES's Breach of Contract counterclaim.  FES argues that the undisputed facts show that it is entitled to summary judgment on these counterclaims.  ECF No. 56 at PageID# 431–33.  StratMar argues that FES voluntarily waived its right to recoup these amounts because it waited over a year to assert a right to recovery.  ECF No. 57-1 at PageID# 1281–84.  For the reasons that follow, the Court denies both motions for summary judgment.

 Waiver of a contractual right may be either express or implied.  *Lewis & Michael Moving & Storage, Inc. v. Stofcheck Ambulance Serv., Inc.*, 2006 WL 2056636 (Ohio Ct. App. July 25, 2006) (citing *Nat'l City Bank v. Rini*, 834 N.E.2d 836 (Ohio Ct. App. 2005)).  Ohio courts find waiver when a party voluntarily relinquishes a known right.  *Elevators Mut. Ins. Co. v. J. Patrick O'Flaherty's, Inc.*, 928 N.E.2d 685, 690 (Ohio 2010) (quoting *White Co. v. Canton Transp. Co.*, 2 N.E.2d 501, 505 (Ohio 1936)).  A party attempting to assert waiver must "prove a clear, unequivocal, decisive act of the party against whom the waiver was asserted."  *White Co.*, 2 N.E.2d at 505; *Monreal Funeral Home, Inc. v. Farmers Ins. Co.*, 937 N.E.2d 159, 164 (Ohio Ct. App. 2010).

 A related doctrine, waiver by estoppel, "exists when the acts and conduct of a party are inconsistent with an intent to claim a right, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it."  *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust*, 804 N.E.2d 979, 1000 (Ohio Ct. App. 2004).

(5:14cv780)

"Waiver by estoppel allows a party's inconsistent conduct, rather than a party's intent, to establish a waiver of rights." *Natl. City Bank*, 834 N.E.2d at 840.  Whether behavior is sufficient to establish waiver by estoppel is a fact question for a jury. *PHH Mortgage Corp. v. Ramsey*, 17 N.E.3d 629, 634 (Ohio Ct. App. 2014).

StratMar is not entitled to summary judgment on the issue of waiver and waiver by estoppel because there is a genuine issue of material fact as to whether FES's conduct constitutes waiver of its right to recoupment.  StratMar presents some evidence that FES made a deliberate decision to pay the 30-day severance.  When FES received the 30-day invoice, two of its employees reviewed it—Doug Zinno and Tim Hutchinson—and decided not to take any corrective action at the time.  ECF No. 58 ¶ 6.  The balance resulted in a credit, which StratMar applied to a subsequent invoice that FES also paid without contemporaneous dispute.  *Id.* ¶ 7.  Although this evidence supports StratMar's waiver argument, it does not "prove a clear, unequivocal, decisive act" on the part of FES.  *White Co.*, 2 N.E.2d at 505; *Monreal Funeral Home, Inc.*, 937 N.E.2d at 164.  Zinno testified that he was "mistaken" that FES needed to pay the 30-day notice invoice.  ECF No. 57-3 at PageID# 1349, p.232.  Hutchinson also testified that he did not believe that FES had to pay the 30-day invoice, but his involvement was limited to "fulfilling the decision made by my boss and the group."  ECF No. 57-4 at PageID# 1442, p.174.  Construing the evidence and the parties' contract in the light most favorable to FES, the evidence does not support the conclusion that FES voluntarily relinquished a known right.

This same evidence forecloses summary judgment under a theory of waiver by estoppel.  The parties dispute whether FES's conduct is inconsistent with its intent to claim a right to

21

(5:14cv780)

recoupment.  StratMar argues that it is; FES argues that it is not.  This determination is within the province of a jury.  *PHH Mortgage Corp*, 17 N.E.3d at 634.

There are genuine issues of material fact as to whether FES's conduct amounts to either express waiver or waiver by estoppel of a right to recoup the overpayments made to StratMar on the 30-day invoice.  Therefore, summary judgment in favor of StratMar is inappropriate.  At the same time, a jury could decide that FES has waived its right to recoup its overpayment, which would foreclose recovery.  FES's motion for summary judgment on its counterclaims, therefore, is also denied.

## IV.  Conclusion

For the forgoing reasons, the Court grants FES's motion for summary judgment as to StratMar's claims, denies FES's motion for summary judgment as to its own counterclaims, and denies StratMar's motion for summary judgment as to FES's counterclaims.

The case will proceed to trial on FES's counterclaims,[1] including on the issue of waiver and waiver by estoppel.

---

[1]  The parties indicate in their reply briefs that they have reached a settlement in principle as to FES's counterclaim for conversion (Count Three) as well as for the portion of FES's breach of contract claim that relates to unreturned iPads.  ECF Nos. 64 at PageID# 1726 n.20; 65 at PageID# 1739 n.3.  The parties represented that they have reached a settlement in principle, do not intend to try these counterclaims, and anticipate filing notice of settlement after one has been finalized.  To date, however, the parties have not filed a notice of settlement as to these claims.

(5:14cv780)


      IT IS SO ORDERED.


  September 24, 2015                  */s/ Benita Y. Pearson*          
Date                                          Benita Y. Pearson
                                            United States District Judge